ROSEMARY MAILHOT *vs.* THE TRAVELERS
INSURANCE COMPANY.

Suffolk. April 5, 1978. — June 2, 1978.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, WILKINS, & LIACOS, JJ.

*Insurance,* Motor vehicle personal injury protection benefits, "No fault" insurance. *Statute,* Construction.

In a tort action for personal injuries suffered when the plaintiff was struck by a car covered by a "no-fault" policy of motor vehicle liability insurance which excluded from its provision for personal injury protection benefits "bodily injury to any person . . . entitled to payments or benefits under the provisions of any workmen's compensation laws,"

---

the plaintiff, who had recovered compensation pursuant to the United States workmen's compensation law, was barred from recovery under the policy even though G. L. c. 90, § 34A, excepts from personal injury protection benefits only those persons entitled to payments under G. L. c. 152, the Massachusetts Workmen's Compensation Act. [344-348]

CONTRACT. Writ in the Municipal Court of the City of Boston dated February 28, 1975.

The action was heard by *Elam*, J.

*Walter C. Gallagher* for the defendant.

*Marshall F. Newman* for the plaintiff.

KAPLAN, J. A statement of agreed facts puts the following case. On November 6, 1973, the plaintiff Rosemary Mailhot, a resident of Boston, employed as a clerk at the United States Postal Service station located in the Roslindale district of Boston, went out to buy early morning coffee for herself and her fellow employees. On her return from a nearby restaurant, as she was crossing Washington Street, she was struck and injured by a car owned by and registered in Massachusetts to Richard G. Swartz and operated at the time by Randy S. Swartz. The car was covered by a policy of motor vehicle liability insurance, with "no-fault," i.e., personal injury protection (PIP) benefits, issued by the defendant The Travelers Insurance Company.

In February, 1975, the plaintiff commenced an action against the defendant company in the Municipal Court of the City of Boston claiming the PIP benefits. See G. L. c. 90, § 34M. The company defended under a clause of its policy excepting or excluding PIP benefits for "bodily injury to any person who is entitled to payments or benefits under the provisions of any workmen's compensation laws." In fact the plaintiff, as an employee of the Postal Service, was entitled to compensation pursuant to the United States workmen's compensation law (5 U.S.C. § 8101 et seq. [1970 & Supp. IV 1974]), and through February 2, 1974, had received compensation of $6,789.15 thereunder. (Medical and hospital bills exceeded $500.) However, the plaintiff pointed to G. L. c. 90, § 34A, which excepts from the PIP

benefits "a person entitled to payments or benefits under the provisions of chapter one hundred and fifty-two" of the General Laws[1] — a reference to the Massachusetts Workmen's Compensation Act. The policy clause, according to the plaintiff, exceeded in scope the statutory exception or exclusion, and to the extent of that excess was illegal and nugatory, leaving the plaintiff with a valid claim. The company stood on the validity of the clause.

In the Municipal Court, judgment went for the company, but, on report, the Appellate Division, holding for the plaintiff by a 2-1 vote, vacated the judgment and remanded the case for the ascertainment of the amount of the PIP benefits.[2] The case is here on appeal under G. L. c. 231, § 109. We disagree with the Appellate Division, and reinstate the judgment first entered.

If the policy clause attempted improperly to enlarge the exception permitted by law, then, despite any approval of the form of policy by the Commissioner of Insurance under G. L. c. 175, § 113A, the clause would crash, and would be taken to have been replaced implicitly by a clause conforming to the law. Compare *Johnson* v. *Travelers Indem. Co.*, 359 Mass. 525, 528 (1971), with *Royal Indem. Co.* v. *Blakely*, 372 Mass. 86, 90 (1977). But we do not believe the words

---

[1] The central provision of G. L. c. 90, § 34A, as amended through St. 1973, c. 806, § 4, is in part as follows: "'Personal injury protection,' provisions of a motor vehicle liability policy or motor vehicle liability bond which provide for payment to the named insured in any such motor vehicle liability policy, the obligor of any motor vehicle liability bond, members of the insured's or obligor's household, any authorized operator or passenger of the insured's or obligor's motor vehicle including a guest occupant, and any pedestrian struck by the insured's or obligor's motor vehicle, unless any of the aforesaid is a person entitled to payments or benefits under the provisions of chapter one hundred and fifty-two, of all reasonable expenses incurred within two years from the date of accident for necessary medical, surgical, x-ray, and dental services, including prosthetic devices and necessary ambulance, hospital, professional nursing and funeral services, and . . . [further enumeration of benefits]."

[2] The record shows that on the remand there was a recovery up to the usual statutory limit of $2,000 with costs and a reasonable attorney's fee (as to the fee, see G. L. c. 90, § 34M).

of G. L. c. 90, § 34A, referring to the Massachusetts workmen's compensation statute, should be taken as fully expressive of the applicable law.

When we examined the "no-fault" legislation of 1970 (St. 1970, c. 670) and held it to be constitutional in its general purport, we said it was the "first legislative attempt at a fundamental alteration and modernization of an important segment of the common law of torts." *Pinnick* v. *Cleary*, 360 Mass. 1, 3 (1971). In so large a legislative enterprise, there are likely to be casual overstatements and understatements, half-answers, and gaps in the statutory provisions. As practice develops and the difficulties are revealed, the courts are called on to interweave the statute with decisions answering the difficulties and composing, as far as feasible and reasonable, an harmonious structure faithful to the basic designs and purposes of the Legislature.

Such a process has been taking place with the no-fault law. We cite examples. In *Chipman* v. *Massachusetts Bay Transp. Auth.*, 366 Mass. 253 (1974), a bus passenger sued the Authority for personal injuries on a conventional negligence basis, demanding damages for pain and suffering among other things. The Authority sought to confine the claim to PIP limits and referred to § 6D of G. L. c. 231, inserted by St. 1970, c. 670, § 5, an integral part of the no-fault legislation, which starts with the words, "In any action of tort brought as a result of bodily injury . . . arising out of the . . . operation . . . of a motor vehicle within this commonwealth by the defendant" [recovery for pain and suffering is disallowed unless certain conditions are met]. The seeming inclusiveness of these words tended to support the Authority's defense, but the court held that the defense failed. The plaintiff had no PIP coverage because neither she nor any member of her household owned a car, and the Authority as a "political subdivision," was exempted from the requirement of procuring motor vehicle liability insurance (see G. L. c. 90, § 1A), and had not procured such insurance. Thus it could be said fairly that both parties stood outside the no-fault scheme, and it appeared incongruous to

allow a resort to G. L. c. 231, § 6D. (The *Chipman* case may be read in relation to *Cyr* v. *Farias*, 367 Mass. 720 [1975], where the plaintiffs, who as nonresidents were not entitled to PIP benefits in their own right, were nevertheless excluded by § 6D from recovery for pain and suffering: the distinguishing fact, according to the court, was that the defendant tortfeasor was within the scheme as a resident car owner with the required insurance.)

Just as the *Chipman* case was an instance of a reasoned confinement of the application of the legislation in deference to its purposes,[3] so *Scandura* v. *Trombly Motor Coach Serv., Inc.*, 370 Mass. 612 (1976), is an instance of the laying down of a rule adjacent to the statute (again § 6D) which in a sense enlarged it. In *Scandura* the injured plaintiff sued the bus company on a theory of contract for breach of its obligation as a common carrier to act with due care. The carrier had secured motor vehicle liability insurance on a no-fault basis. The plaintiff argued that § 6D did not apply to eliminate a recovery for pain and suffering because that section spoke of "any action of tort." But the court, assuming that the action was properly characterized as one in contract, held that it should be governed by a rule analogous to that prescribed by § 6D. In the light of the whole legislative pattern, it ought to make no difference that the particular action did not follow the usual tort theory; indeed it would be destructive of the pattern to allow the difference of theory to command the difference of substantive result for which the plaintiff was contending.

To return to the present case: If those entitled to compensation under the Massachusetts workmen's compensation law are excluded from PIP benefits, as the legislation states at c. 90, § 34A, and as the plaintiff concedes, then there is no ground that appeals to reason why those entitled to com-

---

[3] *Smith* v. *Hiatt*, 329 Mass. 488 (1952), is a much criticised case where this court refused to confine general language so as to carry out the design of the statute; see H.M. Hart, Jr. & A.M. Sacks, The Legal Process 1226-1228 (Temp. ed. 1958).

pensation under the workmen's compensation law of another State or the Federal government should not be governed by an analogous rule to be declared by the court.

We do not accept the speculation that there may have been a purpose to treat the beneficiaries of foreign workmen's compensation laws on a different footing than beneficiaries of the domestic law because the compensation under a foreign law might be markedly less than under the domestic (though this is not predicated of the United States compensation law).[4] Nor are we impressed by the thought that, as complete evenhandedness is not achieved under the no-fault legislation (see *Pinnick* v. *Cleary, supra,* 360 Mass. at 30; *Flaherty* v. *Travelers Ins, Co.,* 369 Mass. 482, 487 [1976] ), a lack of it may be tolerated in allowing this plaintiff to recover PIP benefits merely because her workmen's compensation happens to come from a law other than that of Massachusetts. The no-fault legislation certainly aims in general at evenhandedness, and a court should strive toward that goal where feasible. The same can be said about avoiding duplicating recoveries, an objective not fully attained by the legislation (see *Pinnick, supra* at 7), but to be furthered by a court unless somehow forbidden.[5]

---

[4] With at least equal plausibility it might be suggested that the draftsmen were concentrating on Massachusetts residents as plaintiffs, and fell into the unconsidered assumption that if such plaintiffs became entitled to workmen's compensation it would invariably be under the Massachusetts law.

As to the point that another jurisdiction's workmen's compensation scales may be lower than our own, compare *Flaherty* v. *Travelers Ins. Co.,* 369 Mass. 482 (1976). An injured resident plaintiff receiving compensation for lost wages under the Massachusetts workmen's compensation law sought to recover PIP benefits for the same item *less* the compensation received. The court held against the plaintiff: one entitled to workmen's compensation was wholly excluded from PIP benefits even where these would exceed the compensation.

[5] A plaintiff's judgment in the present case would result in a kind of double recovery. (Note the possibility that the United States might lay claim to part of the avails of the plaintiff's judgment under 5 U.S.C. § 8132 [1970 & Supp. IV 1974]; cf. § 8131.)

We observe that our decision does not rest on an interpretation of the very language of the quoted exception of G. L. c. 90, § 34A. Rather we fashion an adjunct to § 34A called for by the sense of that section in its relation to the legislation as a whole. Another way of putting the matter is to say that the maxim expressio unius est exclusio alterius, which is at most only a fallible aid to decision,[6] is seen here to lead to an awkward and even intolerable result, and is therefore abandoned for a more liberal or more encompassing approach.[7]

In the view we have taken, it becomes unnecessary to consider whether our decision could be rested, at least as to the medical expenses, on the proposition that those expenses were not "incurred" by the plaintiff within the meaning of § 34A[8] because they were covered by the United States

---

[6] See Llewellyn, Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are to Be Construed, 3 Vand. L. Rev. 395, 405 (1950).

[7] Professor Keeton's "guidelines" or canons will be found suggestive (R.E. Keeton, Venturing to Do Justice 94-95 [1969]):

"First: Apply the mandate of the statute if it appears that the legislature did in fact both consider and prescribe for the problem at hand.

"Second: If the problem falls beyond the core area that the legislature both considered and prescribed for, defer to the legislature's manifested determinations of principle and policy to the extent they can be ascertained and are relevant to the problem at hand. [Footnote omitted.]

"Third: Subject to the obligations to apply the legislature's mandate and defer to its manifestations of principle and policy, resolve the problem at hand in a way that in the court's view produces the best total set of rules, including those within the core area of the statute and other cognate rules of law, whatever their source.

"Fourth: In deciding the scope of both the legislature's mandate and its manifestations of principle and policy, appraise the available evidence candidly and without resort to any contrary-to-fact presumptions; employ a rebuttable presumption that the legislature is ordinarily clear about its considered mandates, leaving courts to act in accordance with the second and third guidelines with respect to questions it does not clearly answer."

[8] See the last clauses in the extract from G. L. c. 90, § 34A, quoted in note 1, supra.

workmen's compensation law.[9] Cf. *Lincoln St. Realty Co.* v. *Green*, 374 Mass. 630 (1978).

The order of the Appellate Division on report is reversed, the judgment of the Municipal Court of the City of Boston entered in pursuance of that order is vacated (see note 2 *supra*), and judgment will enter for the defendant.

*So ordered.*

---

[9] See 5 U.S.C. § 8103 (1970 & Supp. IV 1974) as to medical expenses.