MURIEL F. FINN & another *vs.* RATE SETTING COMMISSION (and three companion cases). November 14, 1978. 1. We are not persuaded that there was error in the defendant's interpretation of the 1969 regulation in establishing rates of reimbursement to the plaintiffs' nursing home for that year in the above-captioned case (No. 3724). The plaintiffs' contentions give short shrift to the first of the general criteria set out in the second sentence of § 3 of the 1969 regulation for the calculation of rates, "rates will be calculated on the *reasonable* cost of services provided" (emphasis supplied). More importantly, the plaintiffs misinterpret the second of those criteria, the application of certain reimbursement and accounting rules set forth in §§ 4 and 8 of the regulation "and in other situations [the application of] generally accepted accounting principles," as precluding resort to such accounting principles in the treatment of any type of income or expense item touched on in §§ 4 and 8. We read the quoted phrase as requiring the application of those principles in all instances except to the extent that §§ 4 and 8 imposed a contrary requirement. We perceive no such contrary requirement in the material provision of § 8(a), which restricted reimbursable interest charges to "an average *rate* of 10% simple interest" (emphasis supplied) and provided that "all outstanding loans" be considered in arriving at that average, but which was silent as to the total permissible *amount* of such loans and, therefore, as to the total amount of allowable interest thereon. The same is true of § 8(e), which prohibited the inclusion of certain enumerated items in a provider's balance sheet for purposes of determining "equity capital" (i.e., the difference between total assets and total liabilities), but which made no reference to the method by which any includable asset or liability was to be priced. Section 8(e), moreover, must be read together with § 4(E), which permitted a 9% return only on "*reasonable* equity capital" (emphasis supplied). To be sure, the provision on which the hearing officer relied in reducing the amounts of interest and equity capital claimed by the plaintiffs was the schedule of maximum building, improvement, and equipment costs appearing in § 8(b), headed "*Depreciation*" and made expressly applicable only to that subject. However, on the basis of a reading of the regulation as a coherent whole, with due consideration given to the obvious purpose of that schedule (in the words of the hearing officer, "to discourage and not reward the purchase of homes at prices higher than fair and reasonable"), we

think that the hearing officer was right in using the depreciation schedule in § 8(b) to fix maximum values assignable to interest and equity capital for balance sheet purposes. Compare *Murphy Nursing Home, Inc.* v. *Rate Setting Commn.*, 364 Mass. 454, 466-467 (1973), appeal dismissed, 417 U.S. 962 (1974). By the same token, we agree with his reliance on the depreciation schedule to limit the permissible principal amounts of loans obtained to acquire those assets on the "liabilities" side of the balance sheet as well, and to restrict reimbursable interest on such acquisition costs to interest applicable to loans in the same principal amounts. To do otherwise would bring about the anomalous result of using one set of figures to determine asset and liability values for the purpose of computing depreciation and another for all other purposes—contrary to common sense and generally accepted accounting principles. Compare *Mailhot* v. *Travelers Ins. Co.*, 375 Mass. 342, 345, 348 (1978). 2. We also concur in the hearing officer's interpretation in the first of the companion cases (No. 9903): that the reimbursable interest component of the 1972 rates was governed by the 1969 regulation rather than by the one promulgated for 1972. That depreciation was so governed is clear from the provision of § 5(g) of the 1972 regulation in which "the year of acquisition of the home by the owner [in the present case, 1969] governs the schedule to be used in accordance with the regulation in effect for the year of purchase. (e.g. a home purchased in 1969 [would] be governed by the regulation for 1969, and the depreciation limitation schedule found in that year's regulation.)" For the reasons stated in part 1 of this opinion, it follows that reimbursable interest was also subject to the earlier regulation. 3. We do not agree, however, with the hearing officer's rulings in the other companion cases (Nos. 9904 and 9905) that the cost schedules in § 5(e), the comparable subsections of the regulations issued for 1970 and 1971, applied only to homes acquired during those years, and, therefore, that the 1969 regulation controlled the computation of reimbursable depreciation and interest charges incurred in 1970 and 1971. Neither the 1970 nor 1971 version of § 5(e) contained language comparable to that quoted above in the 1972 regulation and we discern nothing in that subsection or elsewhere in the 1970 and 1971 regulations to confine their application to homes changing ownership in those years. To the contrary, each version of § 5(e), unlike § 5(g) of the 1972 regulation, twice made reference to homes "changing ownership in 1969," and unqualifiedly characterized the cost schedule contained therein as applying to homes as to which "there has been a change of ownership after December 31, 1966." 4. The judgments in Nos. 3724 and 9903 are affirmed. The judgments in Nos. 9904 and 9905 are reversed, and new judgments are to be entered in those cases vacating the decisions of the Rate Setting Commission and the Division of Hearings Officers, and ordering a redetermination of the plaintiffs' rates for 1970 and 1971 in accordance with this opinion.

*So ordered.*

*Thomas R. Murtagh* for the plaintiffs.
*Margot Botsford*, Assistant Attorney General, for the defendants.