In the Matter of An Application of the United States for an ORDER AUTHORIZING INTERCEPTION OF ORAL COMMUNICATIONS AND VIDEO-TAPE SURVEILLANCE.

MDB No. 80–353.

United States District Court, D. Massachusetts.

Aug. 15, 1980.*

* This memorandum was impounded by order of the court until May 8, 1981, when the court granted the government's motion to lift the impoundment order so that this memorandum, as well as the application for the surveillance order and supporting materials, could be released to the individuals indicted as a result of the government's investigation.

## MEMORANDUM

KEETON, District Judge.

The United States has applied for an order authorizing interception of oral communications in accordance with Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended, 18 U.S.C. §§ 2510 *et seq.*, and for simultaneous videotape surveillance. The application seeks authorization for surreptitious entry into a private dwelling and implantation of monitoring devices within the dwelling, subject to the limitations of the proposed authorization.

The proposed surveillance is extraordinarily intrusive. The supporting affidavits, however, present compelling evidence of probable cause to believe that ongoing criminal activities, violations of Title 21 of the United States Code, are occurring within the dwelling, that each of the occupants of the dwelling participates in these criminal activities, that investigative procedures thus far used have been without substantial success and that, unless video surveillance as well as oral interception is used, available alternative investigative procedures are unlikely to succeed in identifying particular participants in these activities and evidencing the extent and nature of their participation. These circumstances present an issue, unresolved in statutes and precedents, as to whether the court may properly authorize video surveillance as well as oral interception.

Title III, providing in stated circumstances for "interception" of "oral communication," 18 U.S.C. § 2518, makes no explicit reference to video surveillance. The government argues that authority for video surveillance is derived from two sources, separately or in combination: (1) the Fourth Amendment to the U.S. Constitution and Fed.R.Crim.P. 41 and 57(b) and (2) the court's inherent authority under the All Writs Act, 28 U.S.C. § 1651, in aid of its jurisdiction founded in Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended. In substance, if not explicitly, the government contends that it need not comply with the strict conditions that Title III imposes in relation to applications for a court order authorizing oral interception.

Title III, 18 U.S.C. § 2510 *et seq.*, repeatedly refers to "interception" of "oral communications" and nowhere explicitly addresses video surveillance. Thus, a candid reading of the statute discloses that Congress did not consider and answer questions regarding video surveillance. This gap—this absence of any mandate in the statute as to video surveillance—apparently extends to the legislative history as well; counsel for the Government has not called the court's attention to, nor has the court found, any reference in the legislative history to video surveillance.

Given that neither the statute nor the legislative history addresses issues regarding video surveillance, the views that might be urged upon a court fall into three general categories: (1) the absence of any provisions in Title III regarding video surveillance implies that no strictures like those of Title III are to be imposed, and the court may authorize video surveillance as long as it is not forbidden by the Fourth Amendment, the Rules of Criminal Procedure, and precedents; (2) the absence of provisions in Title III for video surveillance implies that video surveillance is forbidden; (3) the absence of any provisions in Title III regarding video surveillance leaves all questions about video surveillance unanswered by Title III, with the consequence that courts must of necessity fashion answers to all such questions in light of whatever guidance is available in the constitution, in laws, and in judicial decisions. The first and second of these three approaches give little if any weight to the concern that Congress manifested, in enacting Title III, that investigative methods be chosen with due regard both for investigating effectively and for safeguarding individual rights. The third is the more appropriate approach to questions that are unanswered both in the statute

and in the legislative history. When Congress has not directly addressed and answered a question, courts—including lower courts, until the Supreme Court has spoken—in answering, by necessity, should nevertheless be guided by the aims, principles and policies that manifestly underlie enacted statutes. *Cf. Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487, 71 S.Ct. 456, 463, 464, 95 L.Ed. 456 (1951) (Frankfurter, J.); *Mailhot v. Travelers Insurance Co.*, 375 Mass. 342, 377 N.E.2d 681, 684 (1978).

It seems clear that, when Title III of the Omnibus Crime Control and Safe Streets Act of 1968 was under consideration by Congress, "interception" of "oral communications" was the most intrusive form of investigation under scrutiny. Video surveillance, then less well known and less used, has become increasingly significant during intervening years. Most observers would regard it, standing alone, as even more intrusive than interception of oral communications. Clearly, the combination of oral interception and video surveillance is more intrusive than oral interception alone. In these circumstances, judicial deference to aims, policies and principles manifestly underlying Title III's strictures in relation to interception of oral communications should lead to strictures no less severe in relation to video surveillance.

When the Government's pending application was first presented, the court expressed concern that the authorization for this application from the Attorney General's designate, in compliance with Title III, referred only to "interception" of "oral communications" even though the application sought an order for video surveillance as well. The application is now supported by an authorization from a designate of the Attorney General to seek approval of video surveillance as well. The person so acting for the Attorney General, however, is not the same one who authorized the application for oral interception and is not shown to be one designated by the Attorney General to authorize applications for oral interception. In form, the authorizations would have made a stronger case for the order if a single authorization had been issued by a person duly designated by the Attorney General to approve Title III applications. The court concludes, however, that Title III is not formally applicable to video surveillance and that in the present case substantive safeguards at least as rigorous as those required by Title III, and perhaps more so, have been observed. Moreover, the application represents that the agents implementing the video surveillance will be directed that the video surveillance component be turned on *after* it has been determined from the audio component that communications involving illegal activities or illegal activity itself, within the scope of the proposed investigation, is taking place and that the video component remain on only as long as and under the same constraints as are imposed on oral interception for the purpose of minimizing the intrusion consistently with the requirements of Title III.

In these distinctive circumstances and with these special provisions for minimizing intrusion, the application will be allowed and the proposed order will be entered.