**TRUCK CENTER, INC., Plaintiff,**

v.

**FREIGHTLINER
CORPORATION, Defendant.**

Civ. A. No. 89–2687–K.

United States District Court,
D. Massachusetts.

Dec. 17, 1990.

Robert W. Mahoney, Hale & Dorr, Boston, Mass., for plaintiff.

John H. Henn, Foley, Hoag & Eliot, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

KEETON, District Judge.

This is a civil action in which jurisdiction is based on diversity. Plaintiff has alleged various violations of Mass.Gen.L. ch. 93B resulting from the defendant's termination of its franchise agreement. Now before the court are the following: Plaintiff's Motion for Partial Summary Judgment along with supporting documents (Docket Nos. 9, 10, 11, and 28) and Defendant's submissions in opposition (Docket Nos. 25 and 29).

A basic dispute between the parties, relevant to this motion, concerns the interpretation of Mass.Gen.L. ch. 93B, § 8. Chapter 93B was enacted as part of a package of comprehensive remedial legislation aimed at guaranteeing to car dealers fairness in their relationships with car manufacturers under franchise agreements. *See Tober Foreign Motors Inc. v. Reiter Oldsmobile, Inc.*, 376 Mass. 313, 381 N.E.2d 908, 912 (1978). Section 8 declares that the franchisor (defendant here) "shall, ninety days prior to the effective date thereof, forward a copy of such [franchise] agreement ... to the attorney general and to the dealer." Mass.Gen.L. ch. 93B, § 8.

It is undisputed that Freightliner failed to forward copies of the "Freightliner Sales and Service Agreement," the "Standard Provisions" thereto, and an "Annual Operating Requirement Addendum" (collectively referred to as the "Agreement") to the Attorney General ninety days before May 2, 1988, which these documents declare to be their effective date. Freightliner claims that it forwarded a copy to the Attorney General on or about December 4, 1989. Plaintiff challenges the effectiveness of this later forwarding and asserts as the basis for its motion for partial summary judgment that Freightliner's failure to comply with the Section 8 disclosure requirements renders the sales and service agreement ineffective, unenforceable, and totally without legal effect. Defendant argues that its failure to comply with the provisions of this section, even if having other consequences, does not invalidate the clauses of the Agreement on which defendant relies in this case.

The statute does not say what sanction is to be imposed for noncompliance with the Section 8 requirements for disclosure of an agreement, or what effect any such agreement will have if the manufacturer fails to notify either the dealer, the Attorney General, or both. Thus, questions that must be

decided in this case are left unanswered in the statute.

Plaintiff claims that the written Agreement is null and void and that an oral franchise arrangement continues until termination for good cause or by mutual consent, because the defendant did not "forward a copy" of the Agreement to the Attorney General and to the dealer "ninety days prior to the effective date thereof." The sentence of Section 8 in which the 90-day clause appears, however, is introduced by the phrase, "[b]efore any new selling agreement ... *shall become effective,...*." Mass.Gen.L. ch. 93B, § 8 (emphasis added). The emphasized phrase is suggestive of the possibility that the franchisor's failure to make a timely "forward[ing]" merely delays the effective date until 90 days after forwarding, rather than causing the agreement to be entirely unenforceable. Moreover, the distinctly more punitive interpretation of the statute that plaintiff proposes would produce the curious anomaly that the parties could enter into enforceable oral agreements about their relationship, without advance notice to the Attorney General, yet if they reduced any part of the agreement to writing and the franchisor failed to file it, that part alone would be void.

The awkward result to which the proposed interpretation would lead must be rejected. It is inconsistent with the legislative purpose to promote fairness in automobile franchise agreements. It would leave the parties to flounder in a franchise relationship governed only partly by the statute, and in all other respects by ambiguous oral agreements and disputed evidence about the nature and specifics of their course of conduct. No part of the written agreement could be considered by the court for any purpose in deciding disputes between the parties.

Plaintiff's proposed interpretation also fails to take due account of a causation requirement. The statute authorizes damages and equitable relief for one "who suffers any loss ... [or will suffer loss] *as a result* of the use of ... an unfair method of competition or an unfair or deceptive act or practice declared unlawful" by the Act or regulations issued pursuant to it. *Id.,* § 12A (emphasis added).

It would be contrary to the legislative purpose, inconsistent with the causation requirement, and disrespectful of the General Court to attribute to Chapter 93B, in general, and Section 8, in particular, a meaning that imposes such a drastic sanction as plaintiff here proposes. Rather, courts should interpret the statute in a way that is consistent with a common sense understanding of the statute as a whole. *See Mailhot v. Travelers Ins. Co.,* 375 Mass. 342, 348, 377 N.E.2d 681, 684 (1978). Even when statutory provisions "are not a model of legislative drafting," usually their meaning is "nevertheless discernible," and courts must determine that meaning and enforce the legislative "command." *Cf. FMC Corp. v. Holiday,* —— U.S. ——, ———— ————, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990) (Opinion of the Court by O'Connor, J., referring also to the "intent" and "command" of Congress).

It is reasonable to interpret Chapter 93B as requiring that the provisions of Section 8 be met before the terms of the agreement "shall become effective." In this way the manufacturer is denied the benefits of enforcement of the written agreement until 90 days after the formal notification occurs. The statutory objective of allowing an opportunity for scrutiny by a state official is well served, but without the untoward consequences plaintiff's interpretation would produce.

It may be necessary, before disposition of this case, to decide other questions the text of the statute does not answer explicitly. For example, in deciding disputes about details of the franchise relationship existing between the parties during the period before the Agreement became enforceable, should the court entirely disregard all terms of the written Agreement, or may the court nevertheless take the Agreement into account as evidence bearing upon the nature of the relationship? If evidence of the oral communications and the conduct of the parties is admissible as bearing on the nature and duration of the

relationship, are the terms of the written Agreement also admissible as another form of communication between the parties, even though not alone controlling because it is not enforceable until 90 days after compliance with the Section 8 disclosure requirements? These are questions not squarely addressed in the statute or in the submissions of the parties, and I do not undertake to decide them at this time.

The plaintiff's motion for partial summary judgment must be denied. It seeks a declaratory judgment "that the terms of any written agreement between Truck Center and Freightliner are not effective" and that "there is a franchise agreement" between the parties under the statute. Amended Complaint, Count One. A declaration as abstract and ambiguous as this would not serve to resolve any dispute between the parties, and the arguments plaintiff advances to support it are founded on an unacceptable interpretation of the statute.