DISSENTING OPINION
Hershfang, J.,
dissenting:
Because I believe that plaintiff may not use his personal automobile personal injury protection (PIP) benefits to “double-dip,” i.e., to be paid twice for time lost and medical costs resulting from his injuries, I respectfully dissent.
Before turning to the more technical aspects of this case, a word about what being paid twice here means. First, there is the city of Boston which, despite plaintiff’s absence from work, pursuant to G.L.c. 41, §§100 & 11 IF, never skipped a beat on paying plaintiff’s weekly wages. It also paid his medical costs. Thus, plaintiff is and has been whole with respect to those matters. Second, is the payment, in an amount not disclosed, by the insurer for the wrongdoer who caused the accident and its lost-time-from-work and medical-cost consequences. Plaintiff tells us that he used (some of?) that money to reimburse the city for the wages paid him and/or the medical services he *217 received.[1] In any event, whether any payment and whatever sum may in fact have been reimbursed to the city of Boston, plaintiff still has suffered no cost or expense with respect to lost time or medical treatment. Thus, if plaintiff succeeds on his pending PIP claim, the third source of potential payment, he would have been paid twice for those wages and medical costs. For a similar scenario, see Wincek v. West Springfield, 399 Mass. 700 (1987).[2] To allow plaintiff that double recovery would subvert the purposes of the PIP law.
Now, the more technical aspects.
The “Discussion” section of the opinion of the court poses the question before us in the narrow terms counsel for Cox had wished: “were the [chapter 41] benefits Cox received from the city of Boston workers’ compensation benefits?” There follows a learned exegesis on the history of the Massachusetts Workers’ Compensation Law and the subsequently enacted similar provisions of chapter 41. Its aim is to distinguish the two. That is, it attempts to show that payments under the two different laws are somewhat different. Those distinctions, I believe, create no real difference. Moreover, the emphasis on the name given to the payments seems misplaced. It is rather the purposes and provisions of the PIP law and of plaintiff’s insurance contract that, I believe, is the more apt focus. They make clear that the fact plaintiff suffered no loss makes him ineligible for PIP payments here.
The PIP Law
Enacted in 1970, the PIP (no-fault insurance) law established a modified system of compensation under which victims of automobile accidents recover from their own insurers for certain lost time from work and medical costs regardless of fault. As is detailed in Pinnick v. Cleary, 360 Mass. 1, (1971), the landmark case which upheld its constitutionality and recognized the values it reflects, the law “affords the citizen the security of prompt and certain recovery to a fixed amount [now $8,000] of the most salient elements of his out-of-pocket expenses ...” id., at 6. Interestingly for our purposes, the decision goes on to add “and an increased flexibility in avoiding duplicate coverage, at double premiums, for the same expenses.” Id. Thus, coverage for every driver for medical costs is assured, as is a portion of lost wages. However, again significantly for our purposes, the decision goes on to point out that “[b]enefits allocable to lost wages... are reduced by any amounts received under a wage continuation plan or its equivalent.” Id. at 7.
In view of those objectives, it is not surprising that exclusions are carved out of the law under which PIP payments are required, G.L.c. 90, §34A. That section provides for payment “of any amounts actually lost by reason of inability to work and earn wages or salary or their equivalent.” (Emphasis added). Moreover, the amount of recovery for lost wages is reduced by any amounts that the insured receives through a wage continuation program.[3] Finally, the PIP statute excludes from recovery anyone who is “entitled to *218 payments or benefits under the provisions of chapter one hundred and fifty-two.” Thus, the language of the statute makes clear enough that its purpose is to ensure but is limited to coverage for “amounts actually lost.”
While the “no-fault” law, in providing for PIP payments, uses language that excludes those who obtain benefits under “chapter 152,” the Massachusetts Workers’ Compensation Law, that restrictive reading was rejected in Mailhot v. Travelers Ins. Co., 375 Mass. 342 (1978). “We do not believe the words of G.L.c 90, §34A, referring to the Massachusetts Workmen’s compensation statute, should be taken as fully expressive of the applicable law.” Id. at 344-345. Noting that a strict interpretation of the language of the PIP statute is not required and that, indeed, it would lead to an unjust result, Mailhot goes on to hold that a postal worker, who was entitled to benefits not under chapter 152 but under 5 U.S.C. §8101 et. seq., the federal workers’ compensation law, was barred from recovering PIP benefits under the policy covering the vehicle that struck and injured her. Although plaintiff here was not paid under any “Workers’ Compensation Law,” he suffered no loss and thus, as in Mailhot, is viewed as outside the target area of and is ineligible for PIP protection. More important, to allow him double recovery would violate one of the “values” established under the PIP law — to provide all accident victims with prompt payment for out-of-pocket expenses, while at the same time avoiding duplicate coverage for those expenses. Pinnick v. Cleary, 360 Mass. 1, 6 (1971). ‘The no-fault legislation certainly aims in general at evenhandedness, and a court should strive toward that feasible goal.” Mailhot v. Travelers Ins. Co., 375 Mass. 342, 347 (1978).
Similar limitations on plaintiff’s eligibility for PIP payments are contained in plaintiff’s insurance policy. Thus, benefits under the PIP provision of that policy are subject to certain conditions and exclusions, including the following:
Benefits are paid only for expenses or losses actually incurred within two years after the accident. (Emphasis added).
Some people have a wage continuation program at work. If so, we will pay them only the difference between the total we would ordinarily pay under this Part and the amount of the program payments.
We will not pay PIP benefits to or for:
3. Anyone who is entitled to workers’ compensation benefits for the same injury.”
(App., p. 39-40)
The opinion of the court simply ignores the first two of the three above-listed exclusions. Yet the fact plaintiff has incurred no actual loss here or has received benefits under a wage continuation program would seem to make him ineligible for PIP payments under each of those exceptions.[4]
While the opinion of the court, as a kind of “gotcha,” makes much of the absence of the words “or similar laws” following the words “workers’ compensation benefits” in the third listed exclusion, the PIP language used in plaintiff’s automobile insurance policy is not “Workers’ Compensation Law” but rather “workers’ compensation benefits.” *219 Compare Reliance Ins. Co. v. Robertson, 1 Mass. App. Ct. 735, 738 (1979). Thus, there are equal nit-picking “gotcha” arguments on both sides.
The opinion of the court also attempts to make something out of the provision in G.L.c. 41 that conditions payment to an injured officer upon “no fault of the officer,” distinguishing its benefits from those provided by chapter 152. As it turns out, however, the same conditions are imposed under both laws. Thus, G.L.c. 152, §27 denies workers’ compensation “[i]f the employee is injured by reason of his serious and wilful misconduct ...” Similarly, DiGloria v. Chief of Police of Methuen, 8 Mass. App. Ct. 506, 512 (1979), holds that “the concept of fault as used in G.L.c. 41, §11 IF, should be construed, despite the difference in words between the two statutes [G.L.c. 41 and G.L.c. 152], to mean serious and wilful misconduct on the part of the police officer. We reach this conclusion in the absence of any legislative history to the contrary and in reliance on the easily perceptible policy grounds concerning the hazards of a police officer’s job which militate against the imposition of a lower standard.” Moreover, the sought-after distinction was determined in a later case not enough to set the two statutes apart for the purposes of interpretation of insurance policy language. Wincek v. West Springfield, 399 Mass. 700, 704 n.3 (1987).
Finally, the majority opinion of the court makes every effort to distinguish this case from the Mailhot and Wincek cases. I find it significant that after almost thirty years of the “no-fault law,” no case is cited or known that would allow the plaintiff to recover PIP benefits where he has incurred absolutely no monetary loss due to his accident. While the work of police and firefighters may involve them in risks that warrant special and separate legislative treatment, there is nothing in the PIP law which allows the umbrella it creates to be converted in the case of a police officer into a double blanket. Rather, the resulting additional costs for insurance coverage generally would have to be borne by the private payments of the entire class of automobile policy holders and runs counter to the cost containment objectives of “no-fault” as is spelled out in the Pinnick case quoted earlier. In short, allowing double recovery would subvert PIP’s purpose.
Accordingly, I respectfully dissent.

 Indeed, the opinion of the court in footnote 13 claims that “[w]hen Cox settled his claim against the party responsible for his injuries, he reimbursed the City for the benefits that it had extended to him.”

 Whether or not plaintiff has already fully reimbursed the city of Boston for the G.L.c. 41 benefits he received, see footnote 1 above, it seems important to note that plaintiff nowhere contends that if he is successful on his PIP claim he has to pay it or any part of it back to the city of Boston. Indeed, at oral argument in response to a direct question on that issue, plaintiff’s counsel conceded that he did not, a view confirmed in Wincek v. West Springfield, id. at 702 (police officer who recovers under his underin-sured vehicle coverage provision of his personal automobile insurance policy not subject to reimbursing town for chapter 41 payments).

 The PIP statute, G.L.c. 90, §34A, states in pertinent part as follows: “payments for loss of wages ... shall be limited to amounts actually lost by reason of the accident and further limited in the case of persons entitled to wages or salary or their equivalent under any program for continuation of said wages or salary or their equivalent to an amount that, together with any amounts due under such a program, will provide seventy-five per cent of any such person’s average weekly salary or its equivalent for the year immediately preceding the accident.”

 The motion judge used the term “wage continuation program” to describe the chapter 41 benefits that plaintiff received from the city of Boston, [see opinion of the court, at pp. 212 and 213, supra]. In its analysis of the motion judge’s judgment, the opinion of the court ignores the use of that term and its intended consequence in the policy — that receipt of benefits from any such program disqualifies anyone from receiving PIP payments.