Coven, J.
This is the second appeal of this G.L.c. 90, §34M action by a medical provider to recover Personal Injury Protection (“PIP”) payment of medical expenses incurred by defendant CNA Insurance Company’s (“CNA”) insured. Following our reversal of the allowance of CNA’s summary judgment motion,[1] the action was tried in the Lowell District Court and judgment was entered for CNA. Plaintiff Lee S. Knight (“Knight”) now appeals on a charge of error in the denial of four of his requests for rulings of law. As one of these requests sought a ruling that the evidence was insufficient to permit a finding for CNA on the defense of non-cooperation, we recite the facts favorable to CNA.
On December 23, 1997, Tan Quoc Nguyen (“Quoc”) sustained injuries in an accident involving his vehicle and another automobile driven by one Edgar Lus-sier (“Lussier”). Quoc’s vehicle was insured under a standard Massachusetts automobile insurance policy purchased from CNA
Quoc’s brother, Tan Huy Nguyen (“Huy”), received chiropractic treatment from Knight for injuries he claims to have suffered in the December 23rd accident as a passenger in Quoc’s vehicle. On March 9,1998, CNA received Huy’s completed PIP application and authorization to obtain medical data. Prior to that time, CNA believed that there had been no passengers in Quoc’s vehicle at the time of the accident[2] CNA scheduled an independent medical examination (“IME”) for Huy on March 4,1998. The IME examiner determined that the treatment Huy was receiving at that time was reasonable and necessary and that continued treatment was warranted.
Knight submitted several groups of bills to CNA for PIP payment between February 27,1998 and June 10,1998.[3] CNA did not make any payment of these medical bills, and did not notify Huy or Knight of any reasons for non-payment, within ten days of the submission of the bills. At no time during this period did CNA ask Huy to submit to an examination under oath.
In August of 1998, CNA referred Huy’s claim to its counsel, the law firm of Smith and Brink. Smith and Brink was instructed to conduct an examination *199 under oath to confirm CNA’s belief that Huy was a “jump in,” a term used to describe a person not physically involved in an automobile accident who files a fraudulent claim for injuries sustained in that accident. Attorney David Stadolnik (“Stadolnik”) was assigned to represent CNA’s interests.
On August 24, 1998, Stadolnik mailed a letter to Huy’s counsel informing him that Huy and his brother were required to undergo an examination under oath at 10:00 A.M. on September 17, 1998 at Smith & Brink’s law office. Huy’s attorney withdrew from representation after receiving the letter. Thereafter, a notice of the scheduled examination under oath was mailed to Huy and his brother at two addresses; namely, 45 Hartford Ave., Dracut, MA and 307 Pawtucket Blvd., Lowell, MA. The letter was also sent to both addresses via United Parcel Service (“UPS”) delivery on September 16, 1998. On that same day, Stadolnik placed a telephone call to Huy and spoke to a person who identified himself as Huy. On September 17,1998, Huy and his brother appeared for the scheduled examination at the specified time. Huy had with him the letter sent by Stadolnik.
Stadolnik met the brothers in the reception area. After some conversation, Stadolnik concluded that the brothers could not both be interviewed that day because Huy had come in Quoc’s car and Quoc had to leave the office by 11:00 A.M. to get to his job. According to Stadolnik, examinations under oath in the investigation of “jump in” claims have to be taken of all claimants on the same day to prevent discussion among them of their testimony.[4] Thus Huy was asked some preliminary questions and then told that his examination was being suspended because his brother had to leave. During his brief session with Stado-lnik, Huy did confirm under oath that his address was 45 Hartford St. in Dracut, MA. Stadolnik informed Huy that he had seven days to contact the law office with a date that would be convenient for him to continue his examination under oath and, if Huy did not contact Stadolnik, the rescheduling would be arranged by the office.
Huy did not contact Stadolnik. On September 28,1998, Stadolnik mailed a letter, return receipt requested, to Huy at the Dracut address advising Huy that the examination would take place on October 26, 1998. The mail receipt was returned to Stadolnik and bore an “X” mark in the signature section. Stadolnik called the telephone number he had used previously and spoke with an unidentified person who told him that his message about the rescheduled examination would be passed on to Huy. When Huy failed to appear on October 26th, CNA notified Huy that his PIP claim was denied. CNA’s letter was sent to 68 Sheldon St., Lowell, MA instead of Huy’s Dracut address.
At the close of the evidence, Knight filed seventeen requests for rulings of law. The trial judge allowed many of the requests, declined to answer those in improper form that presented a mixed question of fact and law, and denied the remaining requests. The following four requests were denied and are the subject of this appeal:
*200 Request No. 5. A PIP insurer who raises a non-cooperation defense must demonstrate by affirmative evidence beyond speculation that the insured’s non-cooperation with a required condition of the auto policy relating to PIP benefits occurred and caused it actual prejudice.
Request No. 7. Where a PIP carrier raises non-cooperation as a defense and shows that it has been prejudiced, it must prove at trial that it could not, by its own actions, have reasonably avoided the prejudice it alleges to have suffered.
Request No. 11. "Where a PIP insurer has received a PIP application and the claimant’s medical bills and records and (a) does not commence payment of the bills received within 10 days or notify the claimant in writing of its intent not to pay said bills specifying the reasons for said nonpayment within 10 days and (b) does not pay the bills within 30 days of receipt of the bills and records or request an examination under oath of the claimant within said 30 day period, the claimant has no further obligation to attend or participate in an examination under oath.
Request No. 17. The evidence does not warrant a finding for the defendant on the issue of non-cooperation of Tan Huy Nguyen.
1. On June 19, 2003, subsequent to the trial of this case, the Appeals Court decided the case of Lorenzo-Martinez v. Safety Insurance Co., 58 Mass. App. Ct. 359 (2003). In that case, the Court again addressed the issue of whether an insurer who provides uninsured motor vehicle benefits under a standard Massachusetts automobile policy must prove that it has suffered actual prejudice before it may deny benefits to an insured “who refuses to comply with his or her obligation under the policy to ‘submit to an examination under oath ... within a reasonable time after [the insurer is] notified of the [insured’s] claim.’” Id. at 360. Clarifying its earlier decision in Elis v. Safety Ins. Co., 41 Mass. App. Ct. 630 (1996), the Appeals Court held that “a wilful, unexcused refusal to submit to an examination under oath, without proof of actual prejudice to the insurer’s interests resulting from the refusal, constitutes a material breach of the insurance contract discharging the insurer’s liability under the contract.” Lorenzo-Martinez, supra at 363. In deciding the issue, the Court recognized that an insurer has the “reciprocal obligation to exercise good faith and diligence in securing th[e] cooperation,” Id. at 365, of its insured in obtaining an examination under oath from the insured. And as to this “reciprocal obligation” of the insurer, the Court ruled that an insured is relieved of his obligation to submit to an examination under oath if the request for the examination is not made within a reasonable time after the insurer receives notice of the insured’s claim.
Knight argues that the Lorenzo-Martinez decision is inapposite because that case involved uninsured motorists’ benefits rather than the G.L.c. 90, §§34A and 34M PIP benefits at issue in this case. It is true that there is no mention in §34M of an insured’s duty to submit to an examination under oath and that the statute refers only to the defense of non-cooperation. But as recognized in Mailhot v. Travelers Ins. Co., 375 Mass. 342 (1978), in the legislative reform of motor vehicle tort liability, of which PIP is a part, “there are likely to be casual overstatements and understatements, half-answers, and gaps in the statutory provisions. As practice develops and the difficulties are revealed, the courts are called on to interweave the statute with decisions answering the difficulties and composing, as far as feasible and reasonable, an harmonious structure faithful to the basic design and purpose of the Legislature.” Id. at 345. We see no reason, and Knight does not offer one, why the concept of non-cooperation found in §34M, a defense which requires *201 no showing of prejudice in the context of an insured’s non-cooperation with an independent medical examination, see Hodnett v. Arbella Mut. Ins. Co., 1996 Mass. App. Div. 131, 133-134, would not include a refusal to submit to an examination under oath as required by the terms of the standard Massachusetts automobile insurance policy.
In view of Lorenzo-Martinez and our application of its principles to this case, the denial of Knight’s requests for rulings of law numbers 5 and 7 was proper. In .seeking a determination that “prejudice” to the insurer is an element of a non-cooperation defense, both requests advanced an incorrect proposition of law.
2. We find that request for ruling number 11 was also correctly denied. In Columbia Chiropractic Group, Inc. v. Trust Insurance Co., 430 Mass. 60 (1999), the Supreme Judicial Court declined to establish “some sort of forfeiture or waiver” of an insurer’s right to challenge the reasonableness of medical expenses where the insurer fails within the ten day period prescribed by §34M to issue written notice to the insured of its refusal to pay medical bills and the reasons for its refusal.[5] While declining to establish “some sort of forfeiture or waiver” in the absence of a statutory directive, the Court stated that the insurer would violate G.L.c. 93A if it unreasonably withheld payment when properly presented with evidence of medical services rendered.[6] We recognize that in Columbia Chiropractic Group, Inc., the question was one of waiver of the right to contest the reasonableness of the medical bills while in this case, Knight’s request for ruling addressed the insured’s continued duty to attend an examination under oath. In either case, the appropriate remedy for an insurer’s failure to comply with this portion of §34M is to file an independent action in addition to the contractual claim created by the statute. The remedy is not, as Knight argues, to permit the insured to avoid performance of any other obligation imposed upon him by §34M or the insurance policy. Stated alternatively, where the Supreme Judicial Court did not deem the insurer’s failure to comply with the ten day rule a material breach by the insurer, we see no reason to conclude otherwise in these circumstances.
3. The remaining issue is whether the evidence did not permit a finding for CNA on the issue of Huy’s non-cooperation. We do not doubt that as CNA mailed a notice of the rescheduled examination under oath to Huy and Huy failed to appear, the trial judge could have found Huy’s non-attendance to be wilful. “Proper mailing *202 of a letter is ‘prima facie evidence’ in civil cases of its receipt by the addressee.” Commonwealth v. Crosscup, 369 Mass. 228, 239 (1975). Certainly the presumption would apply in this case where the insurer used certified mail. But before reaching the question of Huy’s non-cooperation, it was first necessary to determine whether CNA’s request for the examination under oath was made within a reasonable time. Lorenzo-Martinez, supra at 364-366. If CNA failed to request the examination within a reasonable time after Huy submitted his PIP claim, there existed no duty upon Huy to participate.[7]
In determining whether CNA’s request for an examination under oath was made within a reasonable period of time, we look to Lorenzo-Martinez for guidance. In analyzing that issue, the Appeals Court began with a review of the history of the insurer’s actions after it first received notice of the plaintiffs’ claims. The Court concluded that the insurer’s delay in requesting an examination under oath for nine months following the filing of plaintiff Lorenzo-Martinez’s claim was reasonable because the insurer had made seven unsuccessful requests for a recorded statement by him during that period, and made the examination under oath request only after the insurer was faced with a consumer protection claim and needed the recorded statement as part of its defense. Conversely, the Court found that the insurer had undertaken no investigation of the claim of plaintiff Suarez, did not even attempt to contact Suarez for nine months after notice of her claim, and delayed requesting an examination under oath for thirteen months after claim filing even though it was prepared to settle the claim three months earlier. The Court concluded that the insurer had failed to request the Suarez examination within a reasonable time.
In examining each of the plaintiffs’ claims of unreasonable delay, the Appeals Court considered whether the insurer exercised good faith and due diligence in securing the cooperation of its insured. In other words, before addressing the issue of the insured’s refusal, the Court considered the affirmative defense of non-cooperation by inquiring whether the record presented evidence of the insurer’s “good faith and diligence” in securing the cooperation of its insured. In the present case, it is clear that by February of 1998, CNA was aware of a potential obligation to make payment upon a motor vehicle policy it had issued. In early March of that same year, it received a completed PIP claim from Huy. Between that time and its August 24, 1998 initial request for an examination under oath of Huy, CNA had received three additional sets of medical bills and records for Huy’s treatment. But for the testimony of CNA’s claim specialist that CNA had no knowledge of passengers involved in the December 23,1997 accident prior to receiving Huy’s PIP application, there is no suggestion as to why CNA delayed for four and one-half months before sending the examination under oath notice.
Thus the specific issue presented by the request for ruling number 17 is this: where an insurer harbors an uncommunicated suspicion of fraud on the part of a PIP claimant and does not provide, within the time prescribed by §34M, notice of its intent not to make payment, is the insurer’s otherwise unexplained four and one-half month delay in requesting an examination under oath reasonable as a matter of law. If, upon any rational view of the evidence, there can be found a combination of facts from which the trial judge could have drawn a permissible inference that the delay was reasonable, the request was properly denied. It is clear that CNA’s suspicions of fraud predated Huy’s filing of his application for PIP benefits. It was also established that CNA forwarded Huy’s claim to its counsel for investigation into the suspected fraud. Yet even with these reference points, an *203 inference cannot be drawn that CNA’s suspicions were being actively investigated during the four and one-half month period of inactivity by the insurer.
The issue presented by Knight’s negative warrant request is one of law. Lorenzo-Martinez, supra at 364 (where facts are undisputed, reasonableness is a question of law). The legal question is whether CNA’s demand for an examination under oath was made within a reasonable time of its receipt of Huy’s claim for benefits. CNA’s burden of proof on the issue of non-cooperation obligated CNA to produce evidence to explain why, in the circumstances of this case, it delayed four and one-half months before requesting the examination under oath. The record is devoid of any explanation. In the absence of any evidence of a reasonable justification for CNA’s delay from which a finding of its “good faith and diligence” could be made, we conclude that CNA failed to satisfy its burden of proving that it acted in good faith and with diligence to secure Huy’s cooperation which was an element of its affirmative defense of non-cooperation. The denial of Knight’s request for ruling number 17 was error.
Accordingly, the trial court’s judgment for defendant CNA is vacated and this case is returned to the Lowell Division for a new trial.
So ordered.

 See Knight v. CNA Insurance Cos., 2002 Mass. App. Div. 3.

 CNA’s “claim specialist” handling Huy’s claim testified as follows: “Q. Prior to receiving the Claimant, Mr. Tam Huy Nguyen’s PIP application, isn’t it true that CNA was under the impression that there were no passengers in his vehicle? A Yes.” From the exhibits included in the record, however, it appears that Huy’s PIP application had been sent to him by CNA on February 5,1998.

 CNA received treatment bills and records on February 27, 1998, March 17, 1998, May 4, 1998 and June 10, 1998. Knight’s submission on June 10th was his final accounting of Huy’s treatment.

 In Morales v. Pilgrim Ins. Co., 58 Mass. App. Ct. 722 (2003), decided while this appeal was pending, the Appeals Court upheld the entry of summary judgment for the insurer on the ground that the plaintiffs therein forfeited PIP coverage when they refused to participate in an examination under oath unless each plaintiff was allowed to be present during the examination of the other plaintiff, to which the insurer objected. The Appeals Court noted that an examination under oath is designed to aid the insurer in establishing the legitimacy of a claim, and ruled that the requirement that plaintiffs submit separately and out of the presence of each other was a legitimate procedure to prevent the tailoring of testimony by one plaintiff to that of his fellow plaintiff. Id. at 724-725.

 The fourth paragraph of G.L.c. 90, §34M provides, in pertinent part: “Personal injury protection benefits and benefits due from an insurer assigned shall be due and payable as loss accrues, upon receipt of reasonable proof of the fact and amount of expenses and loss incurred provided that upon notification of disability from a licensed physician, the insurer shall commence medical payments within ten days or give written notice of its intent not to make such payments, specifying reasons for said nonpayment... In any case where benefits due and payable remain unpaid for more than thirty days, any unpaid party shall be deemed a party to a contract with the insurer responsible for payment and shall therefore have a right to commence an action in contract for payment of amounts therein determined to be due in accordance with the provisions of this chapter.... If the unpaid party recovers a judgment for any amount due and payable by the insurer, the court shall assess against the insurer in addition thereto costs and reasonable attorney’s fees.”

 In Brito v. Liberty Mutual Insurance Co., 1996 Mass. App. Div. 63, aff’d 44 Mass. App. Ct. 34 (1997), this Division noted that while no strict liability attaches to an insurer who fails to pay medical bills within thirty days of their submission as mandated by G.L.c. 90, §34M, such delay in payment exposes the insurer to “increased liability in the form of litigations costs, interest and attorney’s fees under Section 34M and possibly to punitive damages under G.L.c. 93A and c. 176D.” Id., 1996 Mass. App. Div. at 66, 44 Mass. App. Ct. at 37.

 CNA does not argue that by attending the first scheduled examination under oath, Huy waived his right to contest the timeliness of CNA’s request.