Swan, J.
Luz Quintana (“Luz”)[2] was injured in an accident while a passenger in a car owned by Lucia Quintana (“Lucia”). Luz’s treating chiropractor, Advanced Spine Centers, Inc., d/b/a First Spine & Rehab (“Advanced Spine”), as an unpaid party, sued Lucia’s insurer, Safety Insurance Company (“Safety”), for personal injury protection (“PIP”) benefits under G.L.c. 90, §34M. Safety raised Luz’s noncooperation as an affirmative defense. A jury found in favor of Safety, and Advanced Spine appeals from that verdict,[3] claiming that the trial court erred in denying its motion for a directed verdict as to Safety’s defense.
The parties stipulated to the facts of the accident’s occurrence on August 4, 2007; insurance coverage for Lucia’s car; and Safety’s receipt of notice of the accident on August 6, 2007, of Luz’s PIP application on August 28, 2007, and of Advanced Spine’s bills, records, and reports. It was also agreed that Safety made no payments on Advanced Spine’s bills, and that Luz was not covered by a health insurance policy. With this evidence, Advanced Spine met its burden of going forward on its PIP claim. See Provenzano v. Arbella Mut. Ins. Co., 2007 Mass. App. Div. 46, 47. The burden then shifted to Safety to prove its defense of noncooperation, the subject of Advanced Spine’s motion for a directed verdict. In reviewing the denial of a directed verdict motion, an appellate court must “tak[e] into account all the evidence in its aspect most favorable to the [nonmoving party] ... to determine whether, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, the jury reasonably could return a verdict for the [nonmoving party].” Phelan v. May Dep’t Stores Co., 443 Mass. 52, 55 (2004), quoting Rubel v. Hayden, Harding & Buchanan, Inc., 15 Mass. App. Ct. *127 252, 254 (1983). ‘The [court] also will make any inference of fact in favor of the party offering the evidence which the evidence warrants and which the jury, with the least degree of propriety, might have inferred.” Shea v. American Hide & Leather Co., 221 Mass. 282, 283 (1915). The same standard applies where, as in the defense of noncooperation, the defendant has the burden of proof. See O’Kelly v. O’Kelly, 8 Met. 436, 439-440 (1844).
Safety’s evidence was as follows. By letter dated August 27, 2007, and referencing Luz, Roland L. Milliard (“Milliard”), an attorney, stated that he was enclosing Luz’s PIP application and release for medical and wage information, and that “[a]ll payments are to be made through my office to insure that I have a copy of all bills and medical records. Experience has shown that this is the only system that guarantees I have a full copy of the medical profile in my files” (emphasis and boldface in original). By letter dated October 30,2007 and sent by certified mail, Bruce Medoff (“Medoff’), an attorney, stated to Milliard that Medoff’s firm had been retained by Safety “to provide legal advice and counsel in connection with the claims for Personal Injury Protection Benefits of your clients, Luz Quintana and Emilio Quintana, regarding the reported incident of August 4,2007,” and scheduled an examination under oath (“EUO”)'[4] at Medoff’s office in Braintree at 11:00 AM on December 12,2007. Luz and Emilio Quintana (“Emilio”)[5] were to appear at that time, and were to submit by December 8,2007 the documents listed in Medoff’s letter. Medoff said that Milliard needed to contact Medoff by December 8th, either to reschedule the EUO or confirm his clients’ attendance, failing which Medoff would assume that Luz and Emilio would not appear for the EUO. He added that if Luz and Emilio did appear without Milliard’s confirming call, the EUO might be delayed due to the difficulty of obtaining a court reporter and interpreter. Medoff concluded that he looked “forward to seeing you and your clients on December 12, 2007.” Included with the letter were detailed driving instructions for Medoff’s office. As evidenced by the signed receipt, the certified letter was delivered on October 31, 2007.
In a letter to Medoff dated November 1,2007, Milliard wrote:
This letter is to inform you that I will not be attending the scheduled examinations under oath of the above referenced Luz and Emilio Quintana. I suggest that you contact the attorney for Future Management and First Spine & Rehab since these examinations have turned into fact finding examinations to be used in the ongoing legal battle between Safety Insurance and Future Management.
*128 A copy of the letter was sent to Advanced Spine’s attorney. On December 12, 2007, Milliard, Luz, and Emilio did not appear at Medoff s office, and after waiting three hours, Medoff dictated that fact to a court reporter at 2:05 PM that day. Accordingly, Medoff was unable to question Luz about the accident or Luz’s injuries, prior accidents, medical history, or treatment. Medoff wrote to Advanced Spine on April 22, 2008 that Safety was denying Advanced Spine’s claims for treatment to Luz.
In Chiropractic Care Ctrs., Inc. v. Arbella Mut. Ins. Co., 2012 Mass. App. Div. 177, we outlined the obligation of a PIP insured to cooperate, including appearing at an EUO:
‘[T]he obligation of the injured party to cooperate with the insurer in a PIP claim is mandated by statute. “Noncooperation of an injured party shall be a defense to the insurer in any suit for benefits authorized by this section and failure of an insurer to pay benefits in the event of such noncooperation shall not in any way affect the exemption from tort liability granted herein.” G.L.c. 90, §34M.’ Lynn Physical Therapy, Inc. v. Commerce Ins. Co., 2011 Mass. App. Div. 107, 111. The submission to an examination under oath is a condition precedent to coverage under a Massachusetts motor vehicle insurance policy. Ellis v. Safety Ins. Co., 41 Mass. App. Ct. 630, 638-639 (1996). A wilful, unexcused failure to submit to an examination under oath constitutes a material breach of the insurance contract without proof of actual prejudice to the insurer’s interests, discharging the insurer’s liability under the contract. Lorenzo-Martinez v. Safety Ins. Co., 58 Mass. App. Ct. 359, 362 (2003).’ Morales v. Pilgrim Ins. Co., 58 Mass. App. Ct. 722, 724 (2003). See Knight v. CNA Ins. Co., 2003 Mass. App. Div. 198, 200. In addition to showing a wilful, unexcused failure to attend an EUO, the insurer must also show that it has met its ‘“reciprocal obligation to exercise good faith and diligence in securing th[e] cooperation” of its insured in obtaining an examination under oath from the insured.... [A] n insured is relieved of his obligation to submit to an examination under oath if the request for the examination is not made within a reasonable time after the insurer receives notice of the insured’s claim.’ Knight, supra at 200, quoting Lorenzo-Martinez, supra at 365.
Id. at 178. Here, the request to Milliard was made within a reasonable time, just 64 days after the filing of the PIP claim. See id. at 179 (67 days found “reasonable by any reported standard”). The request was made to Luz’s lawyer, who had filed a letter of representation for Luz. A finder of fact could infer that the notice was received by Luz, and that Luz knew about it. See Flynn v. Wallace, 359 Mass. 711, 718 (1971); RESTATEMENT (SECOND) OFAGENCY§268(l)(a), at 582 (1958) (“[A] notification given to an agent is notice to the principal if it is given... to an agent authorized to receive it.”). When Milliard stated that he would not attend, Medoff kept the appointment open, in case Luz showed without counsel. She did not. The jury could infer that Luz’s failure to submit to the EUO was wilful. “Wilful means intentional,” New England Trust Co. v. Paine, 317 Mass. 542, 548 (1945), and an inference may be made that a “person ordinarily intends the natural and probable consequences of any act which is knowingly done.” Lannon v. Commonwealth, 379 Mass. 786, 793 *129 (1980) .[6] Medoff testified at trial that Luz’s noncooperation rendered Safety unable to obtain intelligence about the accident, injuries, treatment, and Luz’s medical and driving background.
Advanced Spine’s suggestion that no interpreter was present at the EUO is unavailing. Medoff indicated that an interpreter would be provided, if one was needed (the record does not say), and more quickly if Milliard confirmed in advance whether he was coming to the EUO, which, of course, he did not.
The evidence and all inferences having been sufficient so that a reasonable jury could return a verdict for Safety, the motion for a directed verdict was properly denied.
Judgment affirmed.

 Because three individuals involved in this case share the last name of Quintana, we refer to each by his or her first name.

 Advanced Spine’s complaint also included counts for violations of G.L.c. 93 and G.L.c. 93A, on which the trial judge, sitting without a jury, found for Safety. Advanced Spine has not appealed from those rulings.

 “A statement or examination under oath is an examination conducted by the insurer of the insured who is placed under oath and whose answers are transcribed by a stenographer. 13 COUCH, INSURANCE §§196.6-196.13.” Lynn Physical Therapy, Inc. v. Commerce Ins. Co., 2011 Mass. App. Div. 107, 108 n.2, quoting Lorenzo-Martinezv. Safety Ins. Co., 58 Mass. App. Ct. 359, 365 n.5 (2003).

 The claims of Emilio, apparently another person injured in the accident, were not a subject of this action.

 Advanced Spine relies on Zhang v. Massachusetts Inst. of Tech., 46 Mass. App. Ct. 597 (1999), for the proposition that intent not to perform a contractual obligation is not proved by the mere nonperformance of it. Zhang involved an appeal from summary judgment against the plaintiff on its claim for misrepresentation, where the Court held that “statements of present intention as to future conduct may be the basis for a fraud action if... the statements misrepresent the actual intention of the speaker and were relied upon by the recipient to his damageJJ (emphasis in original1]. Id. at 605-606, quoting McEvoy Travel Bur., Inc. v. Norton Co., 408 Mass. 704, 709-710 (1990). Zhang is inapposite. The instant case is not about fraud. Milliard did exactly what he said he would do — not appear. So too did his client. The EUO proceeded in any event on the date announced with Medoff’s recorded statements of nonappearance. Similarly inapposite is Lamare v. Basbanes, 418 Mass. 274 (1994), also relied upon by Advanced Spine, which held that “[ajbsent an attorney-client relationship, the court will recognize a duty of reasonable care if an attorney knows or has reason to know a nonclient is relying on the services rendered. (Citations omitted.) However, the court will not impose a duty of reasonable care on an attorney if such an independent duty would potentially conflict with the duly the attorney owes to his or her client.” Id. at 276. The relevance of Lamare to this case is obscure. Suffice it to say that, again, Safety relied on nothing to its detriment, but, despite Milliard’s letter, it kept the EUO on schedule to anticipate the possibility that Luz might appear.