Isaura Brito[1] *vs.* Liberty Mutual Insurance Company.

No. 96-P-864.

Middlesex. October 9, 1997. - December 12, 1997.

Present: Perretta, Dreben, & Porada, JJ.

*Insurance,* Motor vehicle personal injury protection benefits. *Statute,* Construction.

In an action brought against an insurer by a pedestrian injured by a motor vehicle, there was no merit to the pedestrian's assertion that G. L. c. 90, § 34M, unconditionally required the insurer to pay all medical benefits within thirty days of the submission of the bills, and, on the record presented, a District Court judge correctly concluded that there had been no unreasonable delay in payment, where the insurer was warranted in seeking reasonable substantiation of the claims, including an independent medical examination. [36-38]

The record of a civil action supported the judge's conclusion that the amount of personal injury protection benefits due from an insurer to a pedestrian injured by a motor vehicle was never explicitly calculated at trial and that there was confusion concerning the exact amount due; where the amount ultimately established was never "due and payable" or late within the meaning of G. L. c. 90, § 34M, the plaintiff was not entitled to attorney's fees. [38-40]

Civil action commenced in the Cambridge Division of the District Court Department on August 25, 1993.

The case was heard by *Jonathan Brant,* J.

*Miles Siegel* for the plaintiff.

*David Hartigan* for the defendant.

Dreben, J. This appeal by the plaintiff concerns the interpretation of G. L. c. 90, § 34M. The plaintiff, a pedestrian hit by an automobile, argues that that statute *unconditionally* requires the insurer of the automobile's driver to pay all medical benefits within thirty days of the submission of the bills to the insurer.

---

[1]Isaura Brito is a minor and this action is brought by her mother as her next friend.

The defendant, whose contentions were upheld by a District Court judge and on appeal by the Appellate Division, argues that benefits are due and payable only upon reasonable and prompt substantiation of the claims. We agree that the statute entitled the insurer in this case to reasonable substantiation of the claims, more particularly, an independent medical examination.

There is no contention by the plaintiff that the actions of the insurer were unreasonable. Indeed, on the judge's findings[2] and the evidence, the plaintiff could not argue otherwise. The judge found that the plaintiff was struck lightly in both knees by an automobile driven by the defendant's insured but was not knocked down, that she had a preexisting knee injury for which she had received treatment, that the accident exacerbated that injury, and that the X-rays taken at the hospital where she received emergency care were "negative."

On July 19, 1993, the insurer received bills from the plaintiff for emergency room hospital services on the date of the accident (January 12, 1993), five other hospital bills for services between January 15 and April 7, 1993, and a chiropractor's bill for services rendered between May 28, 1993 and June 1, 1993. Upon receipt of the bills, the insurer, on July 20, paid the hospital bill for emergency room services but wrote to the plaintiff's attorney asking for reports from the hospital for the later services and for a report from the chiropractor concerning his initial examination. On August 13, after receiving additional records, the insurer wrote to the plaintiff asking her to appear at a medical examination on August 23, 1993. She demurred on the ground that she was unable to get to Winchester, the place of the exam, and after a postponement by the plaintiff, the medical exam was held on September 8, 1993. Additional bills were sent to the insurer, and after the examination most, if not all, were paid.

In the meantime, on August 25, 1993, the plaintiff filed this action alleging, inter alia, that since more than thirty days had passed since receipt by the defendant of the PIP (personal injury

[2]The negligence case against the driver, the defendant's insured, was heard before the same judge as the case at bar. The parties agreed that the evidence in the first case could carry over to the second case and stand for the plaintiff's "being involved in an accident and so forth." We include findings from both cases. The negligence action resulted in a judgment in the plaintiff's favor of $6,000.

protection) benefits application and the $1,193.27 in billings, the defendant insurer had acted in violation of G. L. c. 90, § 34M.

1. The plaintiff's argument that the insurer may not request a physical exam by an insurer-selected physician prior to making payment, or must have the examination completed within thirty days of receipt of the bills, requires an analysis of G. L. c. 90, § 34M. We underline for emphasis certain terms of the statute and set forth a fuller excerpt of the provision in the margin.[3] The statute provides that personal injury protection benefits "shall be due and payable . . . upon receipt of *reasonable proof* of the fact and amount of expenses . . . incurred . . . . In any case where benefits due and payable remain unpaid for more than thirty days, any unpaid party shall . . . have a right to commence an action in contract for payment" and may recover reasonable attorney's fees. Claims for benefits shall include a written description of the "nature and extent of injuries sustained, treatment received . . . and such other information *as may assist in determining the amount due and payable.*" The statute requires the injured person to "submit to physical examinations by physicians selected by the insurer as often as may be *reasonably required* and shall do all things

---

[3]Section 34M, as amended through St. 1989, c. 271, in relevant part provides:

"Claim for benefits due under the provisions of personal injury protection . . . shall be presented to the company providing such benefits as soon as practicable after the accident occurs from which such claim arises, and in every case, within at least two years from the date of accident, and *shall include a written description of the nature and extent of injuries sustained, treatment received and contemplated and such other information as may assist in determining the amount due and payable. . . . The injured person shall submit to physical examinations by physicians selected by the insurer as often as may be reasonably required and shall do all things necessary to enable the insurer to obtain medical reports and other needed information to assist in determining the amounts due. . . .*

"Personal injury protection benefits . . . shall be due and payable as loss accrues, *upon receipt of reasonable proof of the fact and amount of expenses* and loss incurred . . . . In any case where benefits due and payable remain unpaid for more than thirty days, any unpaid party shall be deemed a party to a contract with the insurer responsible for payment and shall therefore have a right to commence an action in contract for payment of amounts therein determined to be due in accordance with the provisions of this chapter. . . . If the unpaid party recovers a judgment for any amount due and payable by the insurer, the court shall assess against the insurer in addition thereto costs and reasonable attorney's fees."

necessary to enable the insurer to obtain medical reports and other needed information *to assist in determining the amounts due.*"

By using the term "reasonable proof" and by authorizing an independent medical examination as "reasonably required," the statute, contrary to the plaintiff's assertion, permits the insurer, where it has reason to doubt its liability, to require a medical examination by its own physician to assist in determining the "amounts due." The insurer is not required to pay unexplained medical bills merely on the unsubstantiated assertion by the claimant that they represent reasonable and necessary treatment for injuries caused by the accident. As the Appellate Division stated:

> "The insurer remains obligated to make full PIP payments within thirty days of receipt of medical reports, hospital or treatment records, IME [independent medical examination] findings or other proof of a claim which could objectively be considered 'reasonable', and which in most cases can be promptly submitted by the claimant. Delay or demand beyond that point automatically exposes the insurer to increased liability in the form of litigation costs, interest and attorney's fees under Section 34M . . . ."

There was here no unreasonable delay, and the insurer was warranted in seeking an independent examination in view of the minor nature of the impact (the plaintiff was not knocked down), the negative X-rays, and the plaintiff's prior knee injuries.

To hold, as the plaintiff contends, that the insurer is obligated to pay medical bills before the examination and report authorized by the statute would nullify the statutory procedure for determining the amounts due.[4] Nor is it reasonable, in view of doctors' schedules, to expect the medical examination and report to take place within the thirty-day period.

---

[4]The cases relied on by the plaintiff either involved different statutory provisions, see *DiBassie* v. *American Standard Ins. Co. of Wis.*, 8 Kan. App. 2d 515, 517-518 (1983); *Hagains* v. *Government Employees Ins. Co.*, 150 N.J. Super. 576, 581 (1977), or presented no reason for the insurer to suspect the claim, see *Kentucky Farm Bureau Mut. Ins. Co.* v. *Roberts*, 603 S.W.2d 498, 498-499 (Ky. App. 1980). They are, therefore, inapposite. *Jones* v. *State Farm Mut. Ins. Co.*, 156 Ga. App. 230 (1980), which was overruled by an en banc decision, on other grounds, *Atlanta Cas. Co.* v. *Flewellen*, 164 Ga. App. 885 (1982), and *Ralph* v. *Ohio Cas. Ins. Co.*, 363 Pa. Super. 286 (1987), cited by the plaintiff in support of her claim, comport with our conclusion.

A number of jurisdictions having similar statutes authorize the insurer to conduct medical examinations if the insurer's request is reasonable. *Jowers* v. *Nationwide Ins. Co.*, 832 F.2d 1246, 1251-1252 (11th Cir. 1988) (applying Georgia law); *Hudson* v. *Omaha Indem. Co.*, 183 Ga. App. 847, 849 (1987); *Neal* v. *State Farm Mut. Ins. Co.*, 529 N.W.2d 330, 333 (Minn. 1995). See *Huntt* v. *State Farm Mut. Auto Ins. Co.*, 72 Md. App. 189, 194-196 (1987) (upholding insurer's requiring a medical examination where policy provision, but not the statute, authorized such examination). See generally 5 Long, The Law of Liability Insurance § 28.14, at 121 (1997) ("The insured may be required to submit to a medical examination as a prerequisite for the recovery of personal injury protection benefits").

2. The plaintiff also argues that the trial judge's findings with respect to the defendant's payment of outstanding bills were clearly erroneous. The judge found that

> "[a]t the time of trial, Defendant believed that it had paid all of Plaintiff's PIP claim. The trial revealed the possibility that some PIP claims may be outstanding. Defendant has expressed a willingness to consider any outstanding PIP claims which were previously unknown to it."

In denying a ruling requested by the plaintiff that "there is no evidence that receipt of all checks from the Defendant were accepted in full payment of sums incurred for medical services," the judge explained:

> "Defendant attempted to pay all claims for PIP. To the extent that it has not done so, this resulted from confusion concerning the amounts due."

In response to one of the defendant's requests for rulings, the judge also found that on October 1, 1993, after receiving the report of the independent chiropractic exam, the defendant promptly paid plaintiff's outstanding medical and chiropractic bills.[5]

Contrary to the plaintiff's contention, the trial judge's findings — that there was confusion as to the amounts due and that

---

[5]In its decision, the Appellate Division pointed out that the plaintiff never amended her complaint to include claims for any amounts that became due and payable subsequent to the commencement of the action, and noted:

the amounts were never explicitly calculated at trial — are amply supported by the record. Indeed, the amounts claimed as medical bills by the plaintiff at trial varied from $2,500 to over $4,000. The findings were not clearly erroneous.

By noting the defendant's willingness to consider any outstanding PIP claims, the trial judge left open the possibility of future payments by the insurer. Similarly, by basing its dismissal of the action on the ground that it was premature, but see note 5, *supra*, the Appellate Division also suggested that the matter was left open. Since the amount due claimed by the plaintiff is now ascertained ($253) and is uncontested,[6] and since the insurer was willing, at least previously, to pay whatever sums were due, we direct that judgment be entered for the plaintiff in that amount plus interest. This will forestall further litigation and comport with the uncontested facts.

In the circumstances of this case, this amount ($253) was not "due and payable" or late within the meaning of G. L. c. 90, § 34M, so as to entitle the plaintiff to attorney's fees. The judge found that the defendant attempted to pay all claims, and to the extent that was not done it was because of the confusion generated by the plaintiff as to what amount was due. Not only was there uncertainty as to the amount of the bills presented, there was no focus at trial on the dates of these bills. Accordingly, the defendant is not subject to increased liability in the form of costs and attorney's fees.

The judgment of the Appellate Division is vacated, and a

---

"The plaintiff failed in the trial court and in oral argument before this Division to specify the amount of PIP benefits which she claims remain unpaid by the defendant. The record indicates that any outstanding balance relates to benefit payments which were not yet due at the time this suit was filed, and which appear to total less than three hundred ($300.00) dollars."

The Appellate Division thus based its decision on the prematurity of the action. The case, however, was tried and evidence was presented without regard to the August 25 commencement date of the action. For this reason we decline to rely on the same reasoning. Nevertheless, in view of the lack of clarity of the subsequent claims made by the plaintiff or the dates of such claims, the circumstances did not call for an amendment of the pleadings to conform with the proof. Moreover, no amendment was sought by the plaintiff until she came to this court.

[6]This is the amount shown by the defendant's answers to interrogatories, and is consistent with the decision of the Appellate Division. See note 5, *supra*.

new judgment is to enter for the plaintiff in the amount of $253 plus interest.

*So ordered.*