Brennan, J.
On October 9, 1999, Donna M. Godfrey (“Godfrey”) drove her 1998 Dodge Dakota 4X4 (the “truck”) along a bumpy, flooded street into a deep puddle of standing water. The truck engine abruptly died. Godfrey’s unsuccessful insurance and warranty claims for the repair of the truck culminated in this lawsuit.
The truck was leased in 1998 from plaintiff Ron Bouchard’s Auto Stores, Inc. (“Bouchard”) by the Donna M. Godfrey Trust (the ‘Trust”) for God-frey’s use,[4] and was towed to Bouchard’s for repairs when its engine failed in October, 1999. Bouchard is a Chrysler Corporation (“Chrysler”) authorized dealer, and the truck was covered by a three year/36,000 mile manufacturer’s warranty that was still in effect at the time in question. The truck was insured by Arbella Mutual Insurance Company (“Arbella”), and Godfrey filed a claim with Arbella for undercarriage damage to the truck. After two preliminary examinations of the truck at Bouchard’s, Arbella’s claims adjuster (“Spellman”) concluded that the problem was a mechanical defect rather than a covered accident loss and denied Godfrey’s claim. Upon Spellman’s subsequent recommendation and with Godfrey’s authorization, Bouchard undertook first a partial, and then a complete, disassembly of the truck *126 engine to permit inspection of possible internal damage. After a fourth inspection on November 15, 1999, Spellman again determined that the damage to the truck was not an insured loss.
Bouchard had informed Godfrey that the cost of repairs would be covered by either the Chrysler warranty or her automobile insurance. After consultation with Chrysler (App. 98-99), however, Bouchard informed Godfrey that the engine problem was caused by “water ingestion” which was an accidental loss compensable under her Arbella policy and not a mechanical defect covered by the Chrysler warranty. Bouchard refused to repair the engine unless Godfrey paid for the repairs. The truck remained at Bouchard’s until December, 1999, when it was towed to an independent garage operated by Stephen Brehio (“Brehio”). Brehio stored the truck for almost a year until Godfrey had the funds to pay for the repairs, and finally replaced the engine in November, 2000. He gave the discarded parts to Godfrey, who retained them for a year and then threw them away.
Bouchard filed a small claims action against the Trust in March, 2000 to recover $982.75 for the engine disassembly work it had performed. The action was transferred to the regular civil docket at the Trust’s request, and the Trust’s motion to file a third-party complaint against both Chrysler and Arbella was allowed on December 19, 2001. The Trust sought recovery against Chrysler for its alleged breach of express warranty, breach of the implied warranty of merchantability and G.L.c. 93A violations. Chrysler moved for summary judgment and the entry of a separate Rule 54(a) judgment in its favor. Chrysler’s motion was allowed after hearing, and this Dist./Mun. Cts. R. A. D. A., Rule 8C, appeal of that judgment by the Trust followed.
Summary judgment is appropriate only when there is an absence of any genuine issue of material fact and the moving party is entitled as a matter of law to judgment in its favor. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The movant bears the burden of affirmatively establishing both of these requirements. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). As Chrysler would not have the burden at trial of proving the Tenant’s warranty and G.L.c. 93A claims, it could establish the absence of a triable issue by advancing affirmative evidence that negated an essential element of the Trust’s claims or demonstrated that proof of such element was “unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991). In determining whether Chrysler has satisfied its summary judgment burden, we view the Rule 56 materials advanced by both parties and all reasonable inferences that can be drawn from such evidence in the light most favorable to the Trust. Parent v. Stone & Webster Engr. Corp., 408 Mass. 108, 112-113 (1990).
1. G.L.c. 93A. The trial court correctly ruled that Chrysler satisfied its Rule 56 burden on the Trust’s G.L.c. 93A claim by negating an essential element of the Trust’s case.
Count III of the third-party complaint does not state whether the Trust proceeded against Chrysler pursuant to §9 (consumer) or §11 (business) of G.L.c. 93A. The Trust’s failure to send a §9(3) demand letter to Chrysler was, however, fatal to any G.L.c. 93A, §9 claim. Spilios v. Cohen, 38 Mass. App. Ct. 338, 342 (1995). To avoid summary judgment on Count III, it was incumbent upon the Trust to advance specific facts establishing that the Trust was engaged in “trade or commerce” and thus entitled to proceed under §11, which does not have a demand letter prerequisite. The Trust failed to do so, however, as the record is devoid of any indication that the Trust is a commercial entity or is involved in any “trade or commerce.”
*127 2. Express Warranty. Chrysler’s limited manufacturer’s warranty obligated it to pay the "cost of all parts and labor needed to repair any item on a Chrysler vehicle ... that’s defective in material, workmanship or factory preparation.” Chrysler initially contends that it cannot be held liable for breach of that warranty because Godfrey failed to comply with the “preconditions” to warranty service.[5] Specifically, Chrysler argues that Godfrey admitted that she failed to contact Chrysler after Bouchard refused to provide warranty repairs at no cost to her. While God-frey indicated that she did not remember conversations with Chrysler, Bouchard testified that Godfrey did in fact call Chrysler [App. 98-99] after Bouchard’s initial rejection of her claim, that Chrysler then contacted Bouchard in response to God-frey's call to question Bouchard’s assessment that the engine problem was something other than a mechanical defect, that Bouchard confirmed the assessment it had previously communicated to Chrysler, and that Chrysler simply took no further action. Bouchard’s deposition was sufficient to raise triable issues as to whether Bouchard and Godfrey properly notified Chrysler of the disputed warranty claim, and whether written and telephone notice to Chrysler afforded it ample opportunity to inspect the truck while it was at Bouchard’s.[6]
Chrysler’s second argument is that Godfrey has no reasonable expectation of proving at trial that the engine failure was caused by a defect in “material, workmanship or factory preparation” covered by the express warranty. Chrysler suggests that the problem was “engine flooding” or hydrolock resulting from damage attributable to the bumpy and flooded condition of the road upon which Godfrey traveled, or engine malfrmction caused by improper vehicle maintenance. Damage caused by “abuse or negligence,” “accident” and “environmental factors” such as “floods,” “storms” or “road hazards” are expressly excluded by the warranty. However, when asked if there was evidence of a “manufacturer’s defect” in the truck engine, Spellman testified on deposition that “[t]here was definitely an ongoing problem there. My determination, whether it be the head gasket or the sealant on the bolt, that would have come from the manufacturer [sic] being assembled.” Further, an affidavit by Brehio states that he inspected the engine parts and concluded that the problem “was caused by a manufacturer’s defect which allowed water to enter the engine.” Brehio specifically excluded inadequate maintenance or road hazards as possible causes of the problem he observed. While the affidavit lacks the details drawn from Spellman on deposition, it is sufficient to indicate the existence of a triable issue, see Ford Motor Co. v. Barrett, 403 Mass. 240, 244 (1988), particularly when considered in conjunction with Spellman’s assessment. *128 “A toehold ... is enough to survive a motion for summary judgment.” Marr Equip. Corp. v. I.T.O. Corp. of New England, 14 Mass. App. Ct. 231 235 (1982).
Finally, Chrysler contends that it cannot be held liable for breach of express warranty because the engine was ultimately repaired by Brehio, who is not an authorized Chrysler dealer. However, the refusal to provide warranty repairs at no cost to Godfrey was made by Bouchard, an authorized dealer. Moreover, Chrysler has failed to substantiate its contentions that it never had an opportunity to inspect the truck, and that Bouchard was not its agent in handling or refusing Godfrey’s warranty claim.[7] In addition to Bouchard’s deposition, Chrysler’s own internal notes [App. p. 86] establish that it had been apprised of the warranty dispute; was aware that “dealer run tests” had revealed a cracked engine block;” that the dealer was nevertheless denying warranty service; and that as of November 29,1999, the course of action was for the dealer to inspect the truck again with the customer. By that time, the truck had been at Bouchard’s for almost two months and Chrysler could have inspected the vehicle at any time. Chrysler’s notes also indicated that on January 19, 2000, “mechanic Steve” (presumably Brehio) called Chrysler on behalf of Godfrey, and stated that he had inspected the engine, determined that a broken piston had caused the engine failure, and that Arbella agreed that there was a “manufacturer’s defect.” Chrysler’s notes state that it informed Brehio that “because of the dealers inspection no assistance offered.” Chrysler’s own records thus indicate that it elected to rely on Bouchard’s inspection in refusing warranty service. As argued by Chrysler on this appeal, a principal’s statements or conduct are the source of an agent’s actual or apparent authority. Shafnacker v. Raymond James & Assoc., Inc., 425 Mass. 724, 734 (1997). Chrysler has failed to negate the existence of a material issue of fact as to Bouchard’s authority as its agent in denying Godfrey’s warranty claim.
3. Implied Warranty of Merchantability. Recovery for breach of an implied warranty of merchantability in the sale of a vehicle requires proof that it was not fit for the ordinary purposes for which an automobile is generally used and that the defect existed at the time the vehicle was sold or leased. Walsh v. Atamian Motors, Inc., 10 Mass. App. Ct. 828, 829 (1980). Chrysler argues that it is entitled to summary judgment on the Trust’s implied warranty claim as a matter of law because Godfrey disposed of the engine parts replaced by Brehio and that such spoliation of evidence necessarily precludes proof at trial that the truck’s engine defect existed at the time of the Trust’s lease.
The Massachusetts general rule as to spoliation is
that persons who are actually involved in litigation (or know that they will likely be involved) have a duty to preserve evidence for use by others who will also be involved in that litigation. Where evidence has been destroyed or altered by persons who are parties to the litigation, or by persons affiliated with a party (in particular, their expert witnesses), and another parly’s ability to prosecute or defend the claim has been prejudiced as a result,... a judge may exclude evidence to remedy that unfairness.
*129 Fletcher v. Dorchester Mut. Ins. Co., 437 Mass. 544, 549-550 (2002). The record is clear that Godfrey, a person “affiliated” with the third-party plaintiff Trust, discarded defective engine parts approximately one year after Brehio’s repairs. That fact alone, however, does not automatically entitle Chrysler to summary judgment as a matter of law at this stage of the proceedings prior to any hearing and determination of the spoliation issue by the trial court.
The question of spoliation is addressed to a trial judge’s “broad discretion to make evidentiary rulings, including the power to exclude evidence that would unfairly prejudice an opposing party.” Gath v. M/A-Com, Inc., 440 Mass. 482, 485 (2003). There is a broad “spectrum of remedies,” Id,., available for spoliation, and the particular sanction imposed in any given case must be “carefully tailored to remedy the precise unfairness occasioned by that situation.” Fletcher v. Dorchester Mut. Ins. Co., supra, at 551. Crafting an appropriate remedy requires a factual determination of the identity of the spoliated evidence, its relevant or dispositive probative status, the availability of alternative evidence, the nature and degree of prejudice to the other side, and the intentional or negligent character of the action by the spoliator. “[Tjhe least severe sanction necessary to remedy the prejudice to the nonspoliating party” should be imposed. Keene v. Brigham and Women’s Hosp., Inc., 439 Mass. 223, 235 (2003).
Preliminary factual questions remain on the question of spoliation in this case. See Nally v. Volkswagen of America, Inc., 405 Mass. 191, 198-199 (1989). The record does not establish which engine parts were discarded by Godfrey and how prejudicial the absence of that specific evidence would actually be to Chrysler’s defense. Contrary to Chrysler’s arguments, Brehio’s affidavit states that “[tjhe engine parts relevant to the issue of the cause of the engine break-down remain in my possession. They have been in my possession for about 4 years.” Testimony from Bouchard’s mechanics, who disassembled the engine, and from Spellman, who inspected the engine before and after disassembly, presumably remains available. There is also reference in the record to photographs taken of the truck engine during disassembly. See Kendall v. Hyannis Restorations Intern. Sales, Inc., 60 Mass. App. Ct. 1122 (2004). Finally, there has been no determination that God-frey acted intentionally rather than negligently. “[Tjhe extreme sanction of dismissal ... [must] be predicated on a finding of wilfulness or bad faith ... such sanction would not ordinarily be appropriate in a case of negligent spoliation.” Keene v. Brigham and Women’s Hosp., Inc., supra, at 235-236.
Chrysler’s remaining argument is that the Trust cannot reasonably expect to produce evidence that the engine problem was a manufacturer’s defect that existed at the time the truck was leased because the truck had been in three prior accidents, at least two of which involved significant front-end damage. While such evidence is material, if not compelling, it does not conclusively resolve existing issues as to the nature of the engine defect and its cause. Despite the weaknesses of the Trust’s claims, Chrysler should not have sought summary judgment simply because “the facts [it] offers appear more plausible than those tendered in opposition” or because it appears that the nonmoving party is unlikely to prevail at trial. Attorney General v. Bailey, 386 Mass. 367, 370 (1982).
Summary judgment in favor of Chrysler on Count III of the third-party complaint is affirmed. Judgment on Counts I and II is vacated, the allowance of Chrysler’s Rule 56 motion on those counts is reversed, and the matter is returned to the Fitchburg Division for trial.
So ordered.

 The Trust was created solely for the care and support of its single beneficiary, Godfrey, who is disabled. No other information about the Trust appears in the record.

 Chrysler relies on Section 5.1 of the warranty, captioned “How to Deal with Warranty Problems.” Nothing in that section informs a consumer that strict compliance with its terms is a prerequisite to warranty rights. The section states: “A. In General. Normally, warranty problems can be resolved by your dealer’s sales or service department.... But if you’re not satisfied with your dealer’s response to your problem, Chrysler recommends that you do the following: Step 1. Discuss your problem with the owner or general manager of the dealership. Step. 2. If your dealership still can’t resolve the problem, contact the Chrysler Customer Center. ... C. If Your Problem Still Isn’t Resolved]. If you can’t resolve your warranty problem after following the two steps described in 5.1(A), you can contact the Chrysler Customer Arbitration Process in your area.... This service is strictly voluntary. ...”

 Chrysler states in its brief that “[t]he Warranty is clear that [Chrysler] must view the vehicle and its parts in order to determine applicability of Warranty.” However, the warranty contains no such requirement. Section 5.1(b) merely provides that upon a dealer’s inability to resolve a warranty problem, “a Chrysler representative at Chrysler headquarters will review your situation.”

 Chrysler relies on its “Standard Dealership Agreement” with Bouchard, which states: ‘This Agreement does not create the relationship of principal and agent between [Chrysler] and DEALER, and under no circumstances is either party to be considered the agent of the other.” Chrysler has not identified any section of the warranty agreement given to the Trust which incorporates or even references the agency disclaimer set forth in a contract between Chrysler and a dealer.