Fecteau, Francis R., J.
This case, which originated in the District Court, involved claims by the plaintiff that the defendant breached its contract of insurance with him by failing to pay personal injury protection benefits (“PIP”) upon his application and, in so doing, violated the provisions of G.L.c. 90, §34M, and c. 231, §6D, by continued delay in paying those benefits. Additionally, the original complaint including a claim by the plaintiff that the defendant had violated the provisions of G.L.c. 176D, §3(9), and, c. 93A. The plaintiff obtained a judgment in the District Court, after trial, on the breach of contract count for failure to pay PIP benefits in the amount of $2000.00, plus interest, costs and attorneys fees as provided by statute. The court did not grant the plaintiff a judgment on his claim under c. 93A, §9. Being aggrieved by the ruling, the defendant filed for removal of this case from the District Court, for a trial by jury in this court. The plaintiff did not file any pleading in the District Court indicating that he was aggrieved by the decision therein, or for removal in connection with any finding adverse to him,[1] nor did he file any pleading in the Superior Court indicating his re-insistence upon a juiy trial.
When called for trial on April 11, 2007, the plaintiff caused to be filed and argued a motion in limine which brought into question the issue of the right of the plaintiff to recover PIP damages, since he had recovered tort damages in an arbitration proceeding from the insurer of the adverse operator, inclusive of med *538 ical bills and lost wages. It was the defendant’s position that the claim of the plaintiff, having received a tort settlement from the adverse driver, foreclosed the plaintiffs PIP claim as a matter of law under the statute, a position with which the court agreed and so ruled.
After the court announced its ruling on that motion against the plaintiff, which then disposed of the case which was brought to this court by virtue of the defendant’s removal, the plaintiff then orally insisted upon a right to trial on his claim under the provisions of G.L.c. 93A, which he contends was brought to this court contemporaneously by virtue of the removal by the defendant of the decision adverse to it, notwithstanding the fact that the plaintiff did not file any pleading for removal or appeal of the case from the District Court on account of any decision adverse to him. The defendant opposed the trial of that claim on the ground that the plaintiff had no standing to insist upon a trial in the Superior Court on any claim, as he failed to file any pleading which stated any dissatisfaction with the District Court decision, whether called a removal or an appeal. Arguments were received on this issue and a decision was reserved until after a trial on the merits of the plaintiffs claim on the c. 93A issues which was conducted as a precautionary measure, subject to a decision on the procedural posture of the case.
As regards this procedural point, then, since the plaintiff never indicated by any pleading in the District Court that he was aggrieved by and/or appealing from or removing the case from the District Court, the plaintiff has not taken any step to bring any action or complaint to this court nor is he entitled to any retrial of any decision rendered by that court contrary to his interests, as a fair reading of the provisions of G.L.c. 231, §§97, 102C-104 appear to require. This amounts to a waiver of such claims, including his claim under the provisions of G.L.c. 93A.
In the event that the plaintiff is held not to have waived his rights with respect to his claim under the provisions of G.L.c. 176D, §3 and c. 93A, §9, and given the trial that was conducted, without jury, again, as a precautionary measure so that a decision on the merits could be made in the event that a decision contrary to the rights of the plaintiff for a trial was adversely affected by appellate decision, the following facts are found.
1.The plaintiff had a policy of automobile insurance coverage with the defendant at all relevant time in the form of the Massachusetts Automobile Insurance Policy, Seventh Edition, approved by the Commissioner of Insurance. Part 2 of the plaintiffs auto policy with the defendant reads, in relevant part, as follows:
[s]ome people have a policy of health, sickness, or disability insurance or a contract or agreement with a group, organization, partnership or corporation to provide, pay for, or reimburse the cost of medical expenses (“health plan”). If so, we will pay up to $2000.00 of medical expenses for any injured person. We will also pay medical expenses in excess of $2000.00 for such injured person which will not be paid by a health plan. Medical expenses must be submitted to the health plan to determine what the health plan will pay before we pay benefits in excess of $2000.00 under this part In any case, our total payment for medical expenses, lost wages and replacement services will not exceed $8000.00.
At p. 6.
Part 2 of the policy also states that: “[w]e will not pay PIP benefits to or for an injured person, to the extent those benefits would duplicate expenses or losses recovered by that person in a court judgment or settlement.” At p. 7.
In addition, the policy includes the following: “we may also require you and any person seeking payment under any part of this policy to submit to an examination under oath at a place designated by us, within a reasonable time after we are notified of the claim.” At p. 32, ¶3, under the section entitled: “When There is An Accident Or Loss.”
2. He was purportedly injured in a three-car motor vehicle accident that occurred on January 24, 2001, in which he contends that he was first struck from the rear and, as a result, he was pushed into the car in front.
3. Upon Commerce being notified of the accident, the claim adjuster for Commerce contacted the plaintiff and learned from him that he was claiming to have been injured, contrary to information in the first written notice of loss received from his insurance agent in which no person is listed as having been injured (see ex. 3), and that was covered under a policy of health insurance from his job and that he expected to continue to treat with Dr. Louis Amantea, a chiropractor who had been treating him for a pre-existing injury from an industrial accident.
4. The insurer’s adjuster then over the course of several days sent out request for information to learn about his industrial accident and treatment from Dr. Amantea. On January 30, 2001, he sent a PIP application form to the plaintiff, which contained authorizations to be signed by the plaintiff to allow Commerce to receive information about his medical treatment, his job and lost wages, and his health insurance. This application was returned on March 24, 2001, along with some medical bills. (See ex. 7.) The health insurance affidavit was signed by the plaintiff indicating that he did not have health insurance.
5. By this time, the defendant had several unanswered questions that it wished to pursue, including the possible relationship of injuries sustained in the pre-existing injury and in the auto accident, the relationship between those injuries and the medical treatment being provided, and the proper attribution of the *539 expenses related thereto. In addition, the bills from Dr. Amantea indicated that the plaintiff had Blue Cross and Blue Shield as a health insurer.
6. On April 3, 2001, the insurer wrote to the plaintiffs attorney indicating that their investigation was continuing, and that they sent the authorization forms signed by the plaintiff to his medical providers and employers and were awaiting returns from those requests.
7. By April 20, 2001, Commerce had decided to arrange for the plaintiff to be examined under oath. This procedure was originally scheduled for May 17, 2001, but rescheduled for June 26, 2001, at the plaintiffs request.
8. At this examination, the plaintiff, through counsel’s objection, refused to answer several questions. It appears from that transcript that his counsel would not allow the plaintiff to answer any questions, among others, surrounding the execution of the health insurance affidavit, in which the plaintiff denied having health insurance, contrary to prior information from him indicating that he had Blue Cross and Blue Shield.
9. The plaintiffs tort claim against the adverse party was resolved by binding arbitration, and a decision was made by the arbitrator on or about October 31, 2003. It was an award of general damages, without separate findings or itemization of the elements of damages; furthermore, it did not expressly exclude reasonable and necessary medical expenses nor lost wages, nor did it expressly comment on the obligation to pay or repay PIP claims or damages that would otherwise be subject to PIP coverage, nor was there any reduction on account of PIP damages or claims.
10. The plaintiff did not offer any evidence on the issue of whether he has been harmed by any delay in the payment of medical bills or lost wages claimed and submitted under his PIP coverage, whether before or after the arbitration decision.
RULINGS OF LAW
This claim by the plaintiff seeks damages under the provisions of G.L.c. 93A, §9, incorporating provisions of c. 176D, §3, by reason of the failure of the defendant to either make reasonably prompt payment of personal injury protection benefits alleged due to him on account of suffering injury in a covered motor vehicle accident or a reasonably prompt explanation of its reasons to deny or delay payment. Given the facts of this case, such damages as may exist, if any, must be limited to the period of time between the date that payment of such benefits were first due to be paid by the insurer, if at all, to the date on which the plaintiffs tort claim was resolved by binding arbitration, as such resolution forecloses any further entitlement to PIP damages from that date forward, any complaints by the plaintiff about the defendant’s claims handling from that date forward are thereby foreclosed as well.
It is not contested that insurance coverage generally exists for payment of medical expenses and 75% of lost wages that result from covered accidents under the Standard Massachusetts Automobile Insurance Policy, Seventh Edition, Part II, no. 3, written pursuant to G.L.c. 90, §34M and approved by the Commissioner of Insurance. The defendant contends that it is not liable to the plaintiff under any of the statutes in question due to the plaintiffs violation of policy for failing to submit to an examination under oath and in otherwise failing to cooperate with the defendant in their investigation of his claim. As the defendant claims to have never issued an express denial of coverage or benefits, a position supported by the evidence, the issue in this case is thus viewed as whether the defendant insurer was justified in withholding payment of any portion of the PIP benefits claimed by the plaintiff. It appears that the insurer’s position is staked to the nature of the plaintiffs responses to its questions during the examination under oath as it has not proffered any other reason for the delay or denial of benefits, from that examination continuing to the receipt of the arbitration decision. Following that decision, the defendant having no further liability to the plaintiff for PIP benefits pursuant to the pertinent statute and contractual language, its delay or denial of benefits is lawfully excused.
Among complaints that the defendant appears to be making regarding its contention that the plaintiff failed to properly submit to its examination under oath is his failure to answer questions concerning the health insurance affidavit that was submitted along with his application for PIP benefits. Coordination of benefits is a legitimate issue of concern to PIP insurers. G.L.c. 90, §34A, states, in relevant part, as follows: “[n]otwithstanding the foregoing, personal injury protection provisions shall not provide for payment of more than two thousand dollars of expenses... if, and to the extent that, such expenses have been or will be compensated, paid or indemnified pursuant to any policy of health, sickness or disability insurance or any contract or agreement of any group, organization, partnership or corporation to provide, pay for or reimburse the cost of medical, hospital, dental or other health care services.” In the case of Mejia v. American Casualty Company, 55 Mass.App.Ct. 461 (2002), the court stated, in a case concerning an insurer’s obligation under the “medical payments” coverage of the Massachusetts automobile policy, that “in the matter at hand, after they had each received $2000.00 of PIP benefits for medical expenses, the plaintiffs were required to send their bills for additional medical expenses to their health insurers. If the health insurers refused coverage, the plaintiffs were then required to send the bills to the automobile insurer for consideration under the PIP coverage of the policy ... As the plaintiffs failed to submit their claims in this fashion, it was not improper for the defendant to refuse to pay them.” At 466. Provisions of the defendant’s policy of *540 insurance, in the form of the Massachusetts Automobile Insurance Policy, mirror this coordination of benefits.
In addition, the policy includes the following: “we may also require you and any person seeking payment under any part of this policy to submit to an examination under oath at a place designated by us, within a reasonable time after we are notified of the claim.”
In Mello v. Hingham Mutual Fire Insurance Company, 421 Mass. 333 (1995), a case that involved a first-party fire loss claim, the Supreme Judicial Court distinguished the duty under the policy to submit to an examination under oath from the duty to cooperate, as they relate to the burden on an insurer to prove prejudice, holding that a failure to submit to an examination under oath, if reasonably requested, to be a failure to comply with a condition precedent to recovery and that it constitutes a material breach of the insurance contract. At p. 337. Again, in the case of Ellis v. Safety Insurance Company, 41 Mass. 630, 638-39 (1996), a case in which a first-party vehicle theft claim was involved, the Appeals Court reiterated that “the insured’s failure to comply with a condition requiring an examination under oath constitutes a material and substantial breach of the insurance contract as a matter of law.” [Citing Mello, supra, and Cohen v. Commercial Casualty Insurance Company, 277 Mass. 460, 462 (1931), a burglary loss.) Here, given the conflicting information obtained by Commerce from the plaintiff, its insured, the request of Commerce for an examination under oath was reasonable on the issue of the existence of health insurance. It was unreasonable for him to refuse to answer the questions that concerned the affidavit. There was a legitimate question of whether there was an opportunity for medical bills that exceeded $2000.00 to be submitted to a health insurer and it was reasonable for the defendant to ask him about the conflict between the affidavit and statements from him that he had such coverage, and the accuracy of the health insurance affidavit, including the circumstances surrounding its preparation. It does not matter whether the insurer’s questions may reveal evidence upon which it may decide to deny coverage for a breach of policy conditions, such as for misrepresentation. For her attorney to limit, interfere with and/or obstruct the examination by the attorney for Commerce as demonstrated in the transcription of the examination compels the conclusion that the plaintiffs submission to only some of the questions put to him does not amount to his submission to an examination under oath. For the plaintiff, through counsel, to persist in such a stance as is revealed in this transcript in an effort to limit the right of the insurer to question only the nature of the claimant’s injury and treatment, and not other issues that bear on the entitlement of its insured to benefits under this part of the policy, including its right to delay or disclaim coverage or insist upon a proper coordination of benefits between it and a health insurer defeats the purpose of the examination under oath; surely among legitimate purposes of an insurer’s decision to schedule an examination under oath, including that of Commerce Insurance Company in this case, was due to uncertainly of their liability for some or all of the benefits claimed caused by conflicting information received from the plaintiff as to the availability of health insurance for those benefits in excess of the first layer of coverage. To uphold the plaintiffs objections to the insurer’s questions posed during this examination would essentially render the contractual right to order such an examination meaningless. Commerce was within its rights to schedule such an examination and to ask the questions it did and which the plaintiff refused to answer, especially given the state of the investigation up to that point in time. Rascoe was not within his rights to dictate to Commerce the questions that it could and could not ask. At the least, this vitiates any “extra-contractual” claim by the plaintiff concerning the delay or denial of payment by Commerce of medical expenses that exceed the first $2000.00 layer of PIP coverage.
As regarding the plaintiffs contention that Commerce’s handling of his claim for that first $2000.00 layer of coverage for medical expenses, and for 75% of lost wages, Commerce was also within their rights to explore the relationship of the plaintiffs claim of injuries from an accident purportedly covered under its insurance policy and injuries from a prior accident, to determine whether bills for treatment were being properly attributed to the accident to which they related and to question whether they were being also sent to other insurers for payment. Even though PIP benefits are “no fault” benefits, the claimant must still prove that there is a causal relationship between his injuries and a covered accident, Columbia Chiropractic Group, Inc. v. Trust Insurance Company, 430 Mass. 60, 64-65 (1999), and that the medical treatment was necessary and the charges were reasonable. G.L.c. 90, §34A. Commerce was reasonable in attempting to inquire into that accident, the relationship of injuries sustained therein and a known prior accident and the disposition of bills for treatment of those injuries. The plaintiff contends that he had completely healed from the prior injury, in spite of continued medical visits that were scheduled beyond the date of the car accident which had been arranged beforehand. Commerce had the right to test the plaintiffs contention. Rascoe’s refusal to answer certain questions about the relationship between those accidents prevented it from doing so. Commerce did not have to rely solely upon the face value of the PIP Application, medical bills and reports submitted by Rascoe. It had a right to seek “reasonable proof.” “The insurer is not required to pay unexplained medical bills merely on the unsubstantiated assertion by the claimant that they represent reasonable and necessary treatment for injuries caused by the accident.” Brito v. Liberty Mutual Insurance Company, 44 *541 Mass.App.Ct. 34, 37 (1997). While one might take a view of the posture of the case at that point in time that suggests a better practice would be to explain to the plaintiff the reasons for its need for further investigation into the insurer’s concerns, including whether the medical treatment being sought herein relates to another accident or the possibility that the medical bills being submitted to Commerce were also being submitted to workers’ compensation and/or health insurers, an equally credible view is permissible that the plaintiffs refusal to submit to reasonable questions breached a condition of the policy, which then forgave further performance by Commerce of its duties under the policy, and that the stance of the plaintiff, through counsel, at the examination under oath made further communication on the points at issue futile. In consideration of all of the evidence and the legal authorities upon which the parties rely, the actions of the plaintiff in refusal to answer a number of questions and then leaving the examination prior to the reasonable completion of the examination, after only about 30 minutes of questioning, consisting of 41 pages of transcript,[2] amounts, in substance, to a failure to submit to the examination. This failure to submit is a material and substantial breach of the policy as a matter of law and excuses Commerce from liability on the policy as well as liability under c. 176D, §3 and c. 93A, §9.
ORDERFORJUDGMENT
For the foregoing reasons, a judgment shall enter in favor of the defendant. Counts I through III having been ordered dismissed as a matter of law following arguments on his motion in limine (see court record), Count IV of the plaintiffs claim made pursuant to the provisions of G.L.c. 176D and 93A, §9, is ordered dismissed.

At the time of the filing of the plaintiffs complaint in the District Court, he reserved his right to a trial by jury in the Superior Court in writing under the provisions of G.L.c. 231, §103.

See transcript of Oral Examination Under Oath, attached to Plaintiffs Motion in Limine, docketed as paper no. 4.