Brennan, J.
The plaintiffs have appealed the entry of summary judgment for the defendant-insurer on their breach of contract, G.L.c. 90, §34M, and G.L.c. 93A claims arising from the defendant’s refusal to pay Personal Injury Protection (“PIP”) benefits for their medical expenses. The dispositive issue is whether the plaintiffs’ delayed submissions of their PIP applications prejudiced the defendant-insurer’s investigation, thereby justifying the denial of their PIP claims.
The material facts are undisputed. On April 19,2006, defendant Pilgrim Insurance Company (“Pilgrim”) received two patently incomplete PIP applications from the attorney for plaintiffs Maritele Burgos (“Burgos”) and Maritza Quinones (“Quinones”). The applications alleged the occurrence of an automobile accident almost three months earlier, on January 24, 2006, and constituted the first notice received by Pilgrim of the purported accident.[3]
Burgos, listed on her PIP application as the driver of the vehicle insured by Pilgrim, claimed that she sustained the following injuries in the alleged accident: “Neck, back, shoulder, 3 months pregnant, bent baby finger on left hand and generally shaken up.” Quinones, identified as the passenger and Pilgrim’s “insured,” described her alleged injuries as “[ejntire back and generally shaken up.” Both plaintiffs left blank those sections of the PIP forms requiring them to state whether they had received treatment after the accident by any doctor or hospital (inpatient *50 or outpatient) and, if so, the names and addresses of those doctors or hospitals. No medical bills or treatment records were attached to either PIP application. As to medical expenses to date, both plaintiffs stated, “unknown,” but checked “yes” in response to the question of whether they would have additional medical expenses. Both left blank the question of any eligibility for other medical or health benefits.[4]
Upon receipt of the plaintiffs’ incomplete PIP applications, Pilgrim attempted to reach the plaintiffs’ attorney by telephone. Pilgrim was informed that the attorney was “too busy” to take the call. Pilgrim’s second call to that attorney in early July, 2006 was also ignored.[5]
On August 30, 2006, seven months after the alleged accident and more than four months after the PIP applications had been filed, Pilgrim received partial medical bills and records from the plaintiffs. Although incomplete, the documents were sufficient to establish that both plaintiffs had begun treatments at New England Chiropractic in February, 2006, three weeks after the alleged accident.[6] Thus, at the time they signed their April, 2006 PIP applications omitting any information about medical treatment and providers, both plaintiffs had been undergoing chiropractic treatments for more than two full months, and had already incurred combined medical expenses of $3,770.00.[7] Most significantly, the August 30 documents established that both plaintiffs’ treatments had ended more than two months earlier in June, 2006, and that Pilgrim was, thus, effectively precluded from ordering contemporaneous independent medical examinations (“IME”) of the plaintiffs to assess the necessity of their four months of treatments.
*51 There was no further activity by either party until October 8,2006, when the plaintiffs served Pilgrim with a letter demanding payment pursuant to both G.L.c. 90, §34M and G.L.c. 93A. Pilgrim then delayed an additional five months, until February 28, 2007, before issuing notice that it had scheduled an examination under oath (“EUO”) of each plaintiff on March 21, 2007. At the plaintiffs’ request, Pilgrim rescheduled the EUOs for April 2, 2007. When Pilgrim declined the plaintiffs’ attorney’s second request for a delay, he sent written notice to Pilgrim that the plaintiffs refused to submit to any EUOs because Pilgrim had failed to schedule the same within a reasonable time after notice of their PIP claims. After the plaintiffs failed to appear for the examinations on April 2, 2007, Pilgrim issued notice of its denial of their claims. The plaintiffs commenced this action one week later on April 9, 2007.
On February 4, 2008, Pilgrim moved for summary judgment on the grounds that the plaintiffs breached their duty to cooperate by their refusal to be examined under oath, and by their prejudicial delay in providing notice of their claims. In opposition, the plaintiffs filed a legal memorandum, arguing only that the reasonableness of both Pilgrim’s March, 2007 EUO requests and their refusal to participate were questions of fact requiring a trial on the merits. After hearing, the motion judge ruled that there was no genuine issue of material fact in the case, and that Pilgrim was entitled to judgment as a matter of law based on its defense that it was prejudiced in its ability to investigate the plaintiffs’ claims due to their delayed notice of the identity of their medical providers and the nature and costs of their medical treatments.[8] Summary judgment was entered for Pilgrim on April 1, 2008.
The plaintiffs filed a timely motion[9] to alter or amend, or reconsider, the summa *52 ry judgment in favor of Pilgrim.[10] That motion was denied after hearing, and the plaintiffs filed this appeal.
1. We review the allowance of Pilgrim’s summary judgment motion de novo. Pierce v. Morrison Mahoney LLP, 452 Mass. 718, 724 (2008); Giuffrida v. High Country Investor, Inc., 73 Mass. App. Ct. 225, 227 (2008). As the facts are undisputed, the dispositive issue is whether Pilgrim has satisfied its Mass. R. Civ. P., Rule 56 burden, Ron Bouchard’s Auto Store, Inc. v. Donna M. Godfrey Trust, 2005 Mass. App. Div. 125, 126, of affirmatively demonstrating that it was entitled to judgment in its favor, as a matter of law, on its defense of prejudice resulting from the plaintiffs’ untimely PIP applications.
2. It is undisputed that the plaintiffs’ April 19, 2006 PIP applications failed to include “reasonable proof of the fact and amount of expenses ... incurred.” G.L.c. 90, §34M. Pursuant to §34M, PIP benefits become “due and payable” only upon an insurer’s receipt of such “reasonable proof.” The statute mandates that “reasonable proof’ “shall include a written description of the ‘nature and extent of injuries sustained, treatment received... and such other information as may assist in determining the amount due and payable.’” Brito v. Liberty Mut. Ins. Co., 44 Mass. App. Ct. 34, 36 (1997), quoting §34M. The plaintiffs’ applications failed even to reference the chiropractic treatment they had been receiving for two full months, much less to identify the providers of either that treatment, or of any medical services received by the plaintiffs following the alleged accident. Existing medical reports and hospital and treatment bills were not attached. In short, the plaintiffs’ April 19,2006 filings with Pilgrim failed to constitute effective PIP claims under §34M.
The failure of the plaintiffs’ April 19, 2006 submissions to provide any information that would “assist [the insurer] in determining the [PIP] amount due and payable” as required by §34M is evident in the resulting limitations on the investigative options open to Pilgrim at the time it received the plaintiffs’ initial submissions. Pilgrim could not, for example, have ordered a medical review of the plaintiffs’ treatment records because no records were submitted, and no medical providers from whom records could have been obtained were identified. Moreover, §34M requires that a medical review be undertaken by “at least one practitioner registered or licensed under the same section of [G.L.c. 112] as the practitioner who submitted the bill for medical services." Based on the same absence of any information about the plaintiffs’ medical providers or treatment, Pilgrim was also foreclosed, under then existing law, from ordering IMEs of the plaintiffs.[11]
The medical records and bills necessary for a PIP claim were not submitted by *53 the plaintiffs until August, 2006, seven months after the alleged automobile accident and more than two months after completion of the plaintiffs’ chiropractic treatments. The plaintiffs’ PIP claims were clearly not presented to Pilgrim “as soon as practicable after the accident” as required by §34M.[12]
3. The plaintiffs’ delay in presenting partial PIP applications until August, 2006 would not alone have warranted Pilgrim’s denial of insurance benefits. As Pilgrim concedes, it was required to demonstrate that it suffered actual prejudice from the plaintiffs’ delay. Boffoli v. Premier Ins. Co., 71 Mass. App. Ct. 212, 216 (2008). See generally Lighter v. Lumbermen Mut. Cas. Ins. Co., 43 Mass. App. Ct. 415, 417 (1997) (“The insurer bears the burden of identifying precisely how the delay has caused it to suffer prejudice.”).
The prejudice asserted by Pilgrim is that it was deprived of an opportunity to obtain IMEs of the plaintiffs prior to the completion of their chiropractic treatments. The PIP statute entitles insurers to IMEs by requiring an injured party to “submit to physical examinations by physicians selected by the insurer as often as may be reasonably required and [to] do all things necessary to enable the insurer to obtain medical reports and other needed information to assist in determining the amounts due.” G.L.c. 90, §34M. IME results are a component of the customary “reasonable proof’ of PIP “amounts due” by an insurer for necessary and reasonable medical treatment. Brito, supra at 36-37. “A PIP insurer not only is entitled under G.L.c. 90, §34M to investigate a claim before making payment, but also is obligated to conduct a reasonable investigation before denying any claim of loss under a policy it has *54 issued.” Bohorquez v. Metropolitan Prop. & Cas. Ins. Co., 2000 Mass. App. Div. 226, 228. IMEs are an established tool in such an investigation.
The plaintiffs argue, unpersuasively, that Pilgrim was not prejudiced because it could have scheduled IMEs after its receipt of their medical bills and records in August. But, as noted, the plaintiffs’ chiropractic treatments had ended two months earlier. An IME “is designed to facilitate the assessment of the validity of an insurance claim for medical expenses through an evaluation of the necessity of medical treatment already provided to the claimant, as well as the need for continued treatment (emphasis added). Rivera-Catellano v. Kinkela, 2001 Mass. App. Div. 144, 145. Pilgrim was deprived of an opportunity to examine the plaintiffs at a time, presumably, when their alleged injuries would still have been manifest and their purported need for any medical services, much less four months of chiropractic treatment, might still have been evident. In concluding that an insurer is not required to demonstrate prejudice to justify its denial of PIP benefits upon a claimant’s refusal to undergo an IME, the Northern District of this Appellate Division has stated:
The Legislature’s exclusion from §34M of proof of prejudice as a prerequisite to an insurer’s defense of noncooperation reasonably suggests its recognition of the probable prejudice resulting whenever an insurer is deprived of the opportunity to have a claimant examined as soon as possible after the accident in question. It is at that point in time when the nature and extent of the claimant’s injuries, and the necessity of specific treatment can be most readily ascertained. Absent an IME, an insurer is compelled to rely on the observations, conclusions and reports of the very health providers who are seeking payment for services rendered. An injured party’s refusal to submit to an IME thus clearly frustrates the obvious purpose of the policy and statutory requirement, i.e. to permit the insurer to make its own assessment of the claimant’s injuries and of the reasonableness of the medical expenses for which compensation is sought. Indeed an insured’s refusal of an IME does not merely impair the insurer’s efforts, but actually prevents any meaningful, independent investigation of the PIP claim.
Hodnett v. Arbella Mut. Ins. Co., 1996 Mass. App. Div. 131, 133-134. IMEs of the plaintiffs before they reached, presumably, treatment end results would have given Pilgrim evidence that could not be obtained through later IMEs, or through examinations under oath or medical reviews of treatment records.
We conclude that, on the undisputed facts of this case, the plaintiffs’ PIP application delay prejudiced Pilgrim by depriving it of evidence critical to its investigation and payment of, and defense against, the plaintiffs’ G.L.c. 90, §34M claim. That prejudice justified Pilgrim’s denial of PIP benefits.
Summary judgment for the defendant is affirmed.
So ordered.

 The sole description of that accident provided by the plaintiffs was that their “vehicle was proceeding on Belmont Street [in Worcester] when struck by another vehicle.” No police report, operator’s report, or other information was included with the plaintiffs’ insurance claims to substantiate the occurrence of the alleged accident three months earlier; to identify the other vehicle, its driver, or the driver’s insurer; or to advance those specific facts demonstrating a causal link between the alleged accident and their purported injuries.

 In a memorandum of law in opposition to Pilgrim’s summary judgment motion, which was unsupported by an affidavit of either of the plaintiffs or their attorney, the plaintiffs falsely claimed that they submitted “fully completed PIP applications” in April, 2006. They had wisely abandoned that blatant misrepresentation by the time of argument on this appeal.
The plaintiffs’ applications were at least sufficient to establish that they were not seeking PIP benefits for any lost wages, and that they were not entitled to any employment-related health benefits.

 These Rule 56 assertions by Pilgrim were not supported by affidavit. However, the plaintiffs did not contest or controvert them.

 The August 30, 2006 documents indicated that Burgos had also been examined at Great Brook Valley Health Center sometime after the alleged accident, but before she appeared at New England Chiropractic. Neither the record of that examination and diagnosis by Great Brook, nor any bill for those services, was ever submitted to Pilgrim. Given Burgos’ lack of any health insurance to cover the Great Valley bill, her failure to submit it to Pilgrim for payment is curious. The obvious question that might have arisen at trial is whether Great Valley’s diagnosis cast doubt on the reasonableness or necessity of Burgos subsequent four months of treatment at New England Chiropractic, or of any further treatment.

 The final bills submitted by the plaintiffs for those treatments totaled $4,375.00 for Burgos, and $2,108.00 for Quinones.

 The judge further ruled that the plaintiffs’ refusal to be examined under oath did not constitute noncooperation because Pilgrim had failed to schedule the plaintiffs’ examinations within a reasonable time after notice of their claims. Pilgrim failed to appeal that ruling, or to address it in its brief on this appeal, and has thus waived any issue related to the plaintiffs’ failure to attend the scheduled EUOs. Dist./Mun. Cts. R. A. D. A., Rule 16(a)(4).

 Contrary to Pilgrim’s erroneous contention, the plaintiffs were not required by Mass. R. Civ. R, Rule 59(e) to “file” their motion to alter or amend judgment within ten days of judgment. That rule requires only that a motion to alter or amend be “served” within that ten-day period, Lopes v. City of Peabody, 426 Mass. 1001, 1002 (1997); Arthur D. Little, Inc. v. East Cambridge Sav. Bank, 35 Mass. App. Ct. 734, 742-743 (1994), and then filed within a reasonable time after service. See Sarno v. Bendetson, 1992 Mass. App. Div. 144, 145. Pilgrim conceded that the plaintiffs’ post-judgment motion was served on April 11, 2008, ten days after judgment. The filing of the motion six days later was timely. Because the plaintiffs’ motion to alter or amend was timely filed, it effectively tolled the Dist./Mun. Cts. R. A. D. A., Rule 4(a) ten-day period for filing their notice of appeal, Richardson v. Foodmaster Supermarket, Inc., 1998 Mass. App: Div. 49, 50, rendering the plaintiffs’ appeal timely.

 As no new evidence or issues were advanced, the court could have simply denied the motion. King v. Globe Newspaper Co., 400 Mass. 705, 707 (1987); Bartley v. Phillips, 317 Mass. 35, 39 (1944); 402 Rindge Corp. v. Tsao, 2002 Mass. App. Div. 30, 32. Instead, after electing to reconsider his Rule 56 ruling and after another hear ing, the motion judge issued a second lengthy memorandum of decision clarifying, but not amending, his prior allowance of summary judgment, and denying the plaintiffs’ postjudgment motion.

 See Boone v. Bonina, 2001 Mass. App. Div. 118 (insurer unable to deny PIP benefits on basis of IME conducted by practitioner not registered or licensed under the same section of G.L.c. 112 as provider who bad treated PIP claimant). Thus, in this case, Pilgrim could not, in April, 2006, have ordered IMEs of the plaintiffs without first knowing either the medical specialization of the doctor or provider who was treating the plaintiffs, or the nature of that treatment. On April 17,2008, however, the Supreme Judicial Court held that a PIP insurer “may refuse to pay for medical bills, based on a physical examination of the claimant by a medical practitioner licensed under a medical specialty different from the treating or billing practitioner.” Boone v. Commerce Ins. Co., 451 Mass. 192, 193 (2008). Thus, a PIP insurer would now be able to order an IME based on little more than the scant information provided in the plaintiffs’ initial PIP applications in this case.

 In Boffoli v. Premier Ins. Co., 71 Mass. App. Ct. 212 (2008), the trial judge had ruled that the plaintiffs delay in not filing her PIP application until four months after the accident resulted in a failure to file “as soon as practicable” in compliance with §34M. Id. at 217 n.3. The Appeals Court noted: “This opinion does not establish a time limit within the two-year period when applications must be filed. There may be circumstances in which the filing of an application after four months, but within the two-year period, meets the ‘as soon as practicable’ test. What time period constitutes ‘as soon as practicable’ may vary according to the facts of the case.” Id In this case the plaintiffs’ unexplained delay of seven months following the accident, and six months after the plaintiffs had begun chiropractic treatments, constituted a failure to file timely as a matter of law.